[No. A028378. First Dist., Div. Three. Mar. 31, 1986.]

AFFORDABLE HOUSING ALLIANCE et al.,
Plaintiffs and Appellants, v.
DIANNE FEINSTEIN, as Mayor, etc., et al.,
Defendants and Respondents.

■■■■■■■■■■

**COUNSEL**

Robert De Vries for Plaintiffs and Appellants.

George Agnost, City Attorney, Burk E. Delventhal and Thomas J. Owen, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**SCOTT, J.**—Plaintiffs, a nonprofit corporation entitled the Affordable Housing Alliance, and David Spero, a resident of the City and County of San Francisco (the city), brought an action against Dianne Feinstein in her capacity as the city's mayor (the mayor) and other defendants, seeking to have set aside the mayor's veto of a rent control ordinance enacted by the board of supervisors. Summary judgment was entered for defendants. The question in this case is whether the mayor violated the California Political Reform Act of 1974 (the Act) (Gov. Code, § 81000 et seq.)[1] when she vetoed the ordinance even though she had a financial interest in the decision within the meaning of the Act. We conclude that the mayor's participation in the decision on the ordinance was legally required; therefore no violation of the Act occurred.

I

On January 17, 1984, the board of supervisors passed ordinance No. 109-83-5.1 which amended the city's administrative code provisions relating to rent control. Included in the ordinance was a limitation on the amount of rent that residential landlords could charge new tenants moving into a vacant unit. On January 18, the ordinance was submitted to the mayor pursuant to the requirements of section 2.302 of the city's charter. On January 19, she vetoed the ordinance.

---

[1]Unless otherwise indicated, all statutory references are to the Government Code.

The mayor was away from the city from January 23 through January 27, 1984, and knew that she would be absent for that period when she vetoed the ordinance. She designated various members of the board of supervisors to act as mayor in her absence; none of the acting mayors had a conflict of interest with respect to the ordinance.

The mayor has an ownership interest worth more than $1,000 in five or more residential apartments located at 1075 Sutter Street in the city. On January 26, plaintiffs filed this action to set aside the veto on the ground that because of that ownership, the mayor had a financial interest in the enactment of the ordinance within the meaning of section 87103 of the Act and was therefore prohibited by section 87101 from participating in the decision on its enactment.

The parties filed motions for summary judgment or summary adjudication of the issues. After a hearing, summary judgment was entered in favor of defendants, and this appeal followed.

## II

■ The Act was enacted by initiative. Its implementation and administration are the responsibility of the Fair Political Practices Commission (FPPC). (§ 83100 et seq.) The FPPC is authorized to adopt rules and regulations to carry out the purposes and provisions of the Act (§ 83112), to issue advisory rulings about possible conflicts of interest involving state or local public officials (§ 83114), and to investigate possible violations of the Act (§ 83115).

■ Chapter 7 of the Act establishes rules relating to financial conflicts of interest of public officials. (§ 87100 et seq.; *Hays* v. *Wood* (1979) 25 Cal.3d 772, 778 [160 Cal.Rptr. 102, 603 P.2d 19].) Section 87100 prohibits any public official from knowingly participating in or influencing a governmental decision in which he or she has a "financial interest." (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 778.) As relevant here, a public official has a financial interest in a decision within the meaning of section 87100 "if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on . . . [¶] . . . [a]ny real property in which the public official has a direct or indirect interest worth more than one thousand dollars ($1,000)." (§ 87103, subd. (b).)

Plaintiffs contend that the mayor had a financial interest in the enactment of the rent control ordinance and that her veto of the ordinance was therefore improper. The mayor acknowledges the existence of her financial in-

terest as that term is defined in the Act.[2] She argues that notwithstanding that interest, her participation in the consideration of the ordinance was legally required and proper under section 87101 of the Act and the common law rule of necessity.

■ ■ ■ ■ ■ According to the common law rule of necessity, "where an administrative body has a duty to act upon a matter which is before it and is the only entity capable to act in the matter, the fact that the members may have a personal interest in the result of the action taken does not disqualify them to perform their duty."[3] (*Gonsalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400, 404 [71 Cal.Rptr. 255]; see also *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 365-366 [139 P.2d 908].)

■ The Act includes a "statutory analogue" to the common law rule of necessity. (See *Matter of Hudson* (1978) 4 FPPC Opns. 13, 15.) Section 87101 establishes a limited exception to the rule that a public official shall not participate in a governmental decision in which he or she has a financial interest. In pertinent part, that section provides that a public official is not prevented from "making or participating in the making of a governmental decision to the extent his [or her] participation is legally required for the action or decision to be made. The fact that an official's vote is needed to break a tie does not make his [or her] participation legally required for purposes of this section."

■ The FPPC has adopted a regulation clarifying when participation in an action or decision is legally required. "A public official is not legally required to make or to participate in the making of a governmental decision within the meaning of Government Code Section 87101 *unless there exists no alternative source of decision consistent with the purposes and terms of*

---

[2]In an advisory opinion, the FPPC has concluded that rent control decisions will not affect the interests of owners of three or fewer residential rental units in a manner distinguishable from their effect upon a significant segment of the public generally; therefore a council member who owns three or fewer rental units may vote on or participate in the consideration of a rent control ordinance. In contrast, the FPPC concludes that it is reasonably foreseeable that a rent control ordinance will have a material financial effect, distinguishable from its effect on the public generally, on the ownership interest of persons who own four or more residential units. (*Matter of Ferraro* (1978) 4 FPPC Opns. 62, 66-68.) The mayor apparently does not disagree with this conclusion.

[3]The rule of necessity also means that a judge is not disqualified because of personal interest in the matter at issue if there is no other judge or court available to hear and decide the case. (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 537 [178 Cal.Rptr. 568, 636 P.2d 532]; see *Atkins* v. *United States* (Ct.Cl. 1977) 556 F.2d 1028.)

*the statute authorizing the decision.''*[4] (Cal. Admin. Code, tit. 2, § 18701, subd. (a), italics added.)

■ In this case, plaintiffs argue that the mayor was not legally required to participate in the decision on the rent control ordinance because there was an alternative source of decision under the city's charter. According to section 2.302 of the charter, "Each proposed . . . ordinance . . . adopted by the supervisors shall, within twenty-four hours of such action, be transmitted to the mayor by the clerk of the board . . . . [¶] The mayor shall either approve each . . . ordinance . . . by signing and returning same . . . within the time limit, or he [or she] shall disapprove and veto any . . . ordinance, or veto or reduce any separate appropriation item therein and shall return each . . . ordinance . . . within the time limit. His [or her] failure to make such return shall constitute approval and such ordinance or resolution shall take affect [*sic*] without the mayor's signed approval."[5]

Plaintiffs reason that the mayor's participation in the decision on the ordinance was not legally required because it would have taken effect automatically without her signature. Plaintiffs cite a FPPC regulation which provides in pertinent part that a public official makes a governmental decision when he or she, acting within the authority of his or her office, "[d]etermines not to act . . . unless such determination is made because of his or her financial interest . . . ." (Cal. Admin. Code, tit. 2, § 18700, subd. (b)(5).) Plaintiffs urge that according to this regulation, the failure of the mayor to take action on an ordinance because of a conflict of interest would not constitute a governmental decision within the meaning of the Act.

The flaw in plaintiffs' argument is apparent. Notwithstanding that regulation, the failure of a mayor to sign or veto an ordinance constitutes approval of the ordinance, according to the plain language of the city's charter. Under plaintiffs' reasoning, a San Francisco mayor would be compelled to approve every ordinance in which he or she had a financial interest within the meaning of the Act. Surely plaintiffs cannot seriously be arguing for that one-sided result.

Plaintiffs' argument also ignores the requirement that there must be an alternative source of decision "consistent with the purposes and terms of the statute authorizing the decision." (Cal. Admin. Code, tit. 2, § 18701,

---

[4]The regulation also specifies what a public official with a financial interest in a decision shall do if legally required to make or participate in the making of the decision. (Cal. Admin. Code, tit. 2, § 18701, subd. (b).) Plaintiffs do not argue that the mayor failed to comply with these requirements.

[5]The mayor's veto power is not absolute, as the board may override a veto by a two-thirds vote. (Charter of the City and County of San Francisco, § 2.303.)

subd. (a).) The respective roles which the charter assigns to the mayor and the board of supervisors in the city's legislative process are analogous to the roles of the President and the United States Congress in the federal legislative scheme. (See U.S. Const., art. I, § 7.) The provisions in the federal Constitution requiring that all legislation be presented to the executive before becoming law and granting the executive a qualified power to nullify proposed legislation by veto have been characterized as "integral parts of the constitutional design for the separation of powers." (*INS* v. *Chadha* (1983) 462 U.S. 919, 946 [77 L.Ed.2d 317, 341, 103 S.Ct. 2764].) "It is beyond doubt that lawmaking was a power to be shared by both Houses and the President." (*Id.,* at p. 947 [77 L.Ed.2d at p. 342].)

Similarly, the city's charter makes lawmaking a power to be shared by the board of supervisors and the mayor. It circumscribes the legislative powers of the board by giving the mayor a limited veto power. The importance of the mayor's role in the legislative process is also apparent from section 2.302 of the charter, which provides that in the event of an absence of the mayor for which he or she or the board has failed to designate an acting mayor, no ordinance shall take effect by reason of the mayor's failure to approve or veto the ordinance. Under such circumstances, the time limits for approval or disapproval do not commence until an acting mayor is designated or elected or the mayor returns. Clearly under the charter, the mayor has a significant and unique function in the city's lawmaking process. The "alternative source of decision" which plaintiffs characterize as a satisfactory substitute would effectively eliminate the mayor's role in that process. To so restrict the mayor's duty and discretion either to approve or veto legislation would unquestionably be inconsistent with the terms of the charter and with the separation of powers doctrine underlying its provisions.

### III

Section 3.100 of the city's charter authorizes the mayor to designate a member of the board of supervisors to act as mayor in his or her absence. As already stated, when the mayor vetoed the rent control ordinance on January 19, she knew that she would be away from the city from January 23 through January 27, i.e., during the 10 days allowed her to act upon the ordinance. Pursuant to the charter, she designated various members of the board to act as mayor during her absence. None of those acting mayors had a conflict with respect to the ordinance.

It has been suggested that where there is a legal means of temporarily replacing an administrative officer who has a conflict of interest, the common law rule of necessity is inapplicable. (See *Caminetti* v. *Pac. Mutual L. Ins. Co., supra,* 22 Cal.2d 344, 366 [insurance commissioner permitted to

act despite conflict of interest because no other officer statutorily authorized to make decision].)

A similar principle appears in opinions of the FPPC interpreting section 87101. For example, in *Matter of Hudson, supra,* 4 FPPC Opns. 13, the participation of three of the five members of Petaluma's Board of Building Review was necessary to achieve a quorum, but three board members had a financial interest in an appeal pending before the board. The FPPC noted that the board was the only body authorized to hear the appeal, and that no provision in the city's ordinances permitted either changing the quorum requirements or temporarily appointing an alternate member to resolve conflict of interest problems. Under the circumstances, no alternative source of decision existed, and participation of at least one of the disqualified board members was "legally required" within the meaning of section 87101.

Relying on the foregoing authority, plaintiffs argue that the mayor's participation in the decision on the ordinance was not legally required under the peculiar facts of this case because when she received the ordinance, she knew that others would be acting as mayor during the time she had to act on the legislation.

The argument is unpersuasive. As did plaintiffs' first contention, this argument ignores the requirement that according to FPPC regulation, any alternative source of decision must be *"consistent with the purposes and terms of the statute authorizing the decision."* (Cal. Admin. Code, tit. 2, § 18701, subd. (a).) The charter merely authorizes the mayor to designate an acting mayor to serve in his or her absence. We find nothing in the charter which suggests that this provision was intended to enable or require a mayor to delegate decisionmaking power in the event of a conflict of interest.

According to the charter, the mayor is empowered to take action upon an ordinance as soon as it is transmitted by the clerk of the board of supervisors. Under plaintiffs' theory, however, a mayor with a conflict of interest in a particular ordinance could act or not act upon that ordinance depending upon whether he or she happened to be planning a trip in the immediate future. Plaintiffs cite no authority which supports the novel proposition that the mayor's power to act on legislation is dependent on the timing of his or her travel plans.

Finally, plaintiffs' argument ignores the fact that under the authority of the charter, the mayor himself or herself selects the board members who serve in his or her stead. We fail to see how permitting a public official with a conflict of interest to designate his or her own temporary replacement in

the decisionmaking process would remedy the problems inherent in having that official participate in the decision himself or herself.

In sum, we conclude that the Political Reform Act did not prohibit the mayor from vetoing this ordinance. Judgment is affirmed.

White, P. J., and Merrill, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 26, 1986.