OPINION OF THE COURT
C. Raymond Radigan, J.
This uncontested proceeding for leave to settle and compromise an action for wrongful death is remanded for reconsideration by the parties and the guardian ad litem to review the court’s disposition of the issues presented.
The decedent died on December 4,1980, a victim of the fire at the Stouffer’s Inn in Harrison, New York. He left surviving him a 37-year-old spouse and three children, ages 4, 9 and 13. The chart below sets forth the years of dependency of each distributee and the percentage of their interest in the proposed settlement computed in accordance with the formula adopted in Matter of Kaiser (198 Misc 582).
[[Image here]]
*267 The proposed structured settlement provides for a cash payment of $657,400, and the purchase of annuities for the surviving spouse and children at a cost of $4,992,000 bringing the total settlement to $5,650,000. The money to purchase the annuities has already been paid to Metropolitan Life Insurance Company and as allocated under the proposed compromise, would throw off guaranteed periodic payments totaling $37,674,000 as follows:
[[Image here]]
*268 [[Image here]]
The primary questions presented on this application are:
(1) the propriety of paying attorney’s fees from the “up-front” cash;
(2) the propriety of purchasing an annuity for the widow at a cost that exceeds her Kaiser share of the settlement proceeds;
(3) whether the Kaiser formula should be partially discarded to equalize the respective shares of the children after their minority; and
(4) whether the youngest child, Laurance Green, who would receive 45.95% of the wrongful death proceeds if the Kaiser formula were applied, should be represented by a guardian ad litem if the Kaiser formula is modified.
The requested attorney’s fee is $589,019.33 which amounts to 10.43% of the cost of the settlement. However, its payment absorbs almost 90% of the cash payable under the proposed agreement. The remaining 10% is to be utilized to pay:
(a) $3,706.26 to reimburse the attorneys for their disbursements;
(b) $22,949.76 to compromise a workers’ compensation claim totaling $68,849.29; and
(c) $41,724.15 to the surviving spouse which amount would be subject to payment of the guardian ad litem’s fee.
The amount of the requested legal fee is based on the actual cost of the structured settlement to the defendants. The one question that arises is whether its payments, like the annuities should be spread over a span of years (see, e.g., Matter of Muccini, 118 Misc 2d 38). The circumstances present in this case do not dictate this course. Initially, it must be observed the requested fee is relatively modest, and falls below the usual norm. Secondly, the mother of the children is the principal beneficiary of her husband’s probate estate which, according to the petition on file, has a value of $3,600,000. The spouse *269 reportedly has no cash problem and under the proposed settlement would receive $370,000 a year.*
Under the proposed settlement the amount set aside for the purchase of annuities for each beneficiary is shown below:
[[Image here]]
This allocation of the cost of the annuities is unacceptable since it provides the widow with over one-half million more than she is entitled to under the Kaiser formula, and pays, on behalf of the children, a proportionately lesser amount. The guardian ad litem would prorate the cost of the annuities strictly in accordance with each beneficiary’s Kaiser share. That recommendation is correct.
The guardian ad litem after computing the amount each child would be entitled to during the period of his or her minority, suggests the remainder which he terms the expectancy or inheritance portion of the award, be shared equally by the children. The table that follows graphically shows the allocation advanced by the guardian:
[[Image here]]
The rationale for this departure from the Kaiser rule is the guardian’s conclusion that parents customarily treat their offspring alike when disposing of their property. While this viewpoint is supported by the father’s will, it overlooks the fact that the disposition of the proceeds of a wrongful death action is governed by statute rather than the will of the decedent. However, the guardian also points out that the award to each child under the Kaiser formula reflects a payment for support of *270 $71,922 during each year of their respective minorities in contrast to the $15,000 the widow estimated she needed for that purpose. The recommendation to share equally in the excess not required for support of each child during minority has appeal as a method of softening the rigid impact of the Kaiser formula.
Where adequate provision is made for each child during his or her minority in accordance with their station in life, and the settlement produces a surplus in excess of those requirements, that surplus need not, in every instance, be distributed solely pursuant to a formula that gives preference on the basis of age. An allocation of the surplus that allows for its more equal distribution readily meets the ends of justice. The circumstances of this case permit that procedure to be followed (see, Matter of Maerkle, 44 Misc 2d 617).
The difficulty with the guardian’s recommendation is that it maintains the same level of support for all years of minority ($15,000) without adjustment for future living costs. The youngest child, who has the longest period of dependency, 17 years, is penalized the most by this procedure since his support dollars, which remain static over the greater time period, are more likely to be eroded by inflation. The other drawback to the guardian’s suggestion is that it decreases the youngest child’s Kaiser entitlement by $265,000. The chart below contrasts the amounts payable to each child under Kaiser and the guardian ad litem’s hybrid plan:
[[Image here]]
In view of the loss suffered by the youngest child under his hybrid plan, the guardian raises the question of whether this infant should be represented by a different guardian ad litem. This question presumes that the youngest child may have some vested interest in the application of the Kaiser case formula. However, the courts have not hesitated to deviate from fixing pecuniary loss based solely on a rigid formula (Matter of Singleton, 96 Misc 2d 169). Particularly where, as here, large sums are involved and the basic support requirements of the children have been met leaving excess amounts to be distributed (see, Matter of Maerkle, supra).
The plan proposed by the guardian bears too heavily on the youngest child placing the entire burden for the adjustment of *271 the shares on him. Thus the share of the middle child, without rhyme or reason, is increased so that he receives a total award exceeding his Kaiser entitlement. Logically and equitably this child should also contribute to equalization of the share of the oldest.
The impact placed on the youngest child under the guardian’s proposal, as illustrated by table IV can and should be ameliorated by (1) increasing the annual level of support by 10% every four years; and (2) reducing the middle child’s share of expectancy by 5% and adding it to the share of the youngest child. This modification of the guardian’s plan enlarges each child’s dependency award and decreases the so-called expectancy part. The mathematical changes are shown on the table set below.
[[Image here]]
Insofar as this decision affects changes not contemplated by the parties and reduces the amount to be expended to purchase annuities for the widow, the matter is remanded for reconsideration.

 This amount will be reduced because the premiums allocated for payment of the widow’s annuity exceed the Kaiser entitlement.