OPINION OF THE COURT
Eve Preminger, S.
This case requires a somewhat unusual allocation of the proceeds of a wrongful death settlement, and thus presents *616 the occasion to revisit and readjust the standards traditionally applied in such cases.
Decedent’s distributees are a husband and two adult children, a son and daughter. Although the son makes no claim, the daughter and her father both assert the right to the entire settlement proceeds, based upon their disparate views of their family history and the law.
The decedent, Rose Feld, was an active and alert woman who died at the age of 80, allegedly as a result of medical malpractice. Her 46-year-old daughter Barbara bases her claim to the award on what she characterizes as an unusually close personal and professional relationship with her mother and on allegations that her father mistreated her mother. According to Barbara, Rose was a gifted and innovative grammar school teacher for over 30 years. From the time Barbara began teaching, Rose was her mentor and advisor on a daily basis. They taught in the same school for some time at the beginning of Barbara’s career, and Rose continued to advise Barbara and critique her teaching until her death. Even after Barbara moved to New Jersey her mother visited frequently, often overnight, and they had lengthy daily telephone conversations when they were apart. Rose was also an involved and nurturing grandmother for Barbara’s son, who was born in 1978.
In contrast to her close relationship with her mother, Barbara has been estranged from her father for 20 years. She contends that her father is not entitled to share in the settlement proceeds because he mistreated his wife and children. She cites examples of his indifference to Rose as well as his attempts to prevent Rose from visiting Barbara. Barbara also notes that on several occasions her father borrowed money from Rose for business and personal expenditures and failed to repay it.
The decedent’s husband belittles his daughter’s claim, pointing out that she has been emancipated and self-supporting for 20 years and has resided in another State with her own family. He characterizes his 50-year marriage to decedent as a good one, wherein he was dependent on his wife not only for love, affection, and companionship but also for financial support and housekeeping tasks.
In order to save the time and expense of a hearing, the parties agreed to have the court determine the appropriate allocation on affidavits. Upon analysis, the assertions in the *617 affidavits reveal that the facts are not in dispute, the only difference lies in their interpretation. While the father portrays the daughter as a self-supporting and independent adult who suffers no financial loss by her mother’s death, he does not deny the large and continuing role the decedent played in her daughter’s career. The daughter portrays her father as an abusive and indifferent husband, but she does not dispute that her parents lived together for 50 years without a separation or divorce or that her father received financial aid from her mother. Indeed, some of her opposition to her father’s claim, such as her assertion that he borrowed money from his wife without repayment, is, in fact, a demonstration of his pecuniary loss.
EPTL 5-4.4 (a) (1), which governs the distribution of wrongful death proceeds, provides only the most general outline of how to apportion proceeds between distributees: “Such damages shall be distributed * * * to the persons entitled thereto in proportion to the pecuniary injuries suffered by them”.
While pecuniary injury includes the amounts of money the decedent would have contributed to the support of a spouse or child, it is not limited to actual financial loss. A spouse is entitled to recover not only for the loss of support from decedent’s earning capacity, but also the reasonable value of the household services and family chores decedent would have performed. In addition to support, a child’s compensable injuries include the loss of nurture and guidance caused by the death of a parent. As the Court of Appeals explained long ago, in Tilley v Hudson Riv. R. R. Co. (24 NY 471, 475-476 [1862]): "the word pecuniary * * * was not used in a sense so limited as to confine it to the immediate loss of money or property; for if that were so, there is scarcely a case where any amount of damages could be recovered * * * [t]he injury * * * which a child suffers from the loss of the training and instruction which it is entitled to receive from its parents * * * is not pecuniary in a very strict sense of the word, but it belongs to that class of wrongs as distinguished from injuries to the feelings and sentiments; and * * * it falls within the term as used in the statute.” (See also, Juditta v Bethlehem Steel Corp., 75 AD2d 126 [4th Dept 1980]; Kenavan v City of New York, 120 AD2d 24 [2d Dept 1986], affd 70 NY2d 558 [1987]; Richardson v Lutheran Hosp., 70 AD2d 933 [2d Dept 1979]; Didocha v State of New York, 54 AD2d 786 [3d Dept 1976].)
Children who lose parents may recover damages not only during infancy but for those adult years when the parent *618 would have been alive. Any confusion on that issue[1] was extinguished recently by Gonzalez v New York City Hous. Auth. (77 NY2d 663 [1991]) when the Court of Appeals reaffirmed the principles first expressed in Tilley (supra), and emphasized that neither the age of the child nor the fact that the decedent’s assistance was not financial barred recovery. (See also, McIntyre v New York Cent. R. R. Co., 37 NY 287, 295-296 [1867]; Countryman v Fonda, Johnstown & Gloversville R. R. Co., 166 NY 201, 209-210 [1901]; Gross v Abraham, 306 NY 525, 529-531 [1954]; Korman v Public Serv. Truck Renting Co., 116 AD2d 631 [2d Dept 1986]; McKee v Colt Elec. Co., 849 F2d 46, 50-52 [2d Cir 1988], and cases cited therein.)
It is beyond dispute that legally and factually both Barbara and her father have sustained a substantial pecuniary loss. A more difficult question is how to apportion their respective losses in relation to each other. If there had been a jury verdict for the petitioner, specific amounts would have been awarded to decedent’s husband and daughter reflecting the injury each had incurred under the theories just summarized (CPLR 4111 [f]).
In apportioning compromise proceeds between a spouse and children, the courts have often employed a formula first enunciated in Matter of Uravic (142 Misc 775 [Sur Ct, Kings County 1932]), which later came to be known as the Kaiser formula. (See, Matter of Kaiser, 198 Misc 582 [Sur Ct, Kings County 1950].) This approach calculates the aggregate number of years of estimated dependency of the spouse (generally the spouse’s life expectancy modified by the decedent’s life expectancy) and of each child (generally but not always their minority)[2] and divides the anticipated years of dependency of each distributee by the aggregate number, producing a percentage of the recovery for each distributee.
While adherence to the Kaiser formula simplifies the court’s task, the formula often produces an inequitable division. For *619 example, if there is no surviving spouse and the children are in their teens, the younger child receives a sum substantially in excess of what the age difference and relative injury warrant (see, e.g., Matter of Singleton, 96 Misc 2d 169 [1978]; Matter of Maerkle, 44 Misc 2d 617 [1964]; Estate of Sewell, NYLJ, Oct. 28, 1987, at 14, col 2; Estate of Cepeda, NYLJ, July 30, 1985, at 7, col 1; Estate of Marino, NYLJ, June 9, 1983, at 15, col 5.); and if the decedent and the spouse are both young, the children are likely to receive less than their equitable share. (See, e.g., Estate of Gilliard, NYLJ, Dec. 21, 1988, at 24, col 4.) If the children are not living with their mother, their share under Kaiser (supra) would be too small (see, e.g., Matter of Slater, 108 Misc 2d 555 [1980]) whereas if the settlement is unusually high their share under Kaiser would be too large (see, e.g., Matter of Green, 127 Misc 2d 266 [1985]). In some situations it is in the children’s best interests to receive equal shares. (See, e.g., Estate of Ginsberg, NYLJ, Oct. 24, 1991, at 32, col 3; Estate of Todtman, NYLJ, Dec. 28, 1984, at 15, col 3; Estate of Ross, NYLJ, Mar. 14, 1989, at 26, col 6.) And if a distributee requires extra support due to mental or physical illness or some other unusual circumstances, the formula fails as well. (See, e.g., Matter of Heindel, 51 Misc 2d 26, 27 [1966]; Matter of Markowitz, NYLJ, Oct. 11, 1983, at 17, col 6; Estate of Stanley, NYLJ, June 11, 1985, at 12, col 1.) There are other situations, too numerous to detail, where the application of Kaiser would be unfair. (See, e.g., Estate of Genovese, NYLJ, Oct. 17, 1978, at 13, col 5; Estate of Ramos, NYLJ, Dec. 14, 1978, at 11, col 2; Estate of Roca, NYLJ, Aug. 16, 1989, at 23, col 5; Estate of Scott, NYLJ, May 15, 1985, at 15, col 6.)
There is, further, a fundamental and incurable defect in Kaiser (supra). The formula considers only the difference in the number of years of estimated dependency of each distributee and assumes, incorrectly, that in each year each distributee is entitled to an equal amount. This is an unfounded and inaccurate assumption. The pecuniary loss suffered by a spouse and a child differ from each other in amount, method of computation, and underlying legal theory. A spouse’s pecuniary loss is based upon the amount of decedent’s projected income, plus the replacement cost of decedent’s household services, minus decedent’s personal expenditures (De Long v County of Erie, 60 NY2d 296; Korman v Public Serv. Truck Renting, 116 AD2d 631, supra; Woodring v Board of Educ., 79 AD2d 1022; Keenan v Brooklyn City R. R. Co., 145 NY 348). *620 These sums are computed by referring to economic data, cost-of-living indices and the like.
A surviving child’s recovery, on the other hand, is based primarily upon the monetary replacement for the intangible benefit of the deceased parent’s love, care, nurture and guidance. (Tilley v Hudson Riv. R. R. Co., 24 NY 471, supra; Kenavan v City of New York, 120 AD2d 24, affd 70 NY2d 558.) These elements are not considered in the surviving spouse’s award and are not capable of precise computation (Parilus v Feinstein, 49 NY2d 984 [when child is of tender years "the absence of dollars and cents proof of pecuniary loss does not relegate the distributees to recovery of nominal damages only”]).
Even the most superficial analysis demonstrates that computing a spouse’s and a child’s annual loss is not likely to produce amounts that are identical. Because Kaiser (supra) makes this invalid assumption, it will not yield a correct result in a statistically or equitably acceptable number of instances. It is thus of no aid to this court in allocating the proceeds among a surviving spouse and children. Accordingly, the Kaiser formula will not be applied in future cases.
Instead one must examine all the factors which influence the appropriate proportion among distributees. This will still include consideration of the duration of anticipated support, but not to the exclusion of other factors. Decedent’s income, habits, and prior relationship to the distributees, their needs, circumstances and history of receiving benefits and all other evidence showing a disposition on the part of a decedent to provide assistance to a distributee (Loetsch v New York City Omnibus Corp., 291 NY 308) will be evaluated.
It may be argued that an examination of all relevant factors will be too burdensome in terms of judicial effort and too uncertain in terms of judicial discretion. But these problems are surely preferable to the application of a formula that has little chance of approximating a rational or just result. Courts have recognized the Legislature’s view that in wrongful death actions "the expediency of not having to examine the equities of each case is too dear a price [to pay] for the injustices resulting from rigid formulas which are insensitive to varying fact patterns.” (Matter of Mairowitz, 90 Misc 2d 854, 856 [Sur Ct, Bronx County 1977].)
An examination of the instant case demonstrates the gap between the proper measure of damages and the result under *621 the Kaiser formula. Use of the formula would award Barbara more than one half of the recovery because it measures only length of estimated support and her life expectancy is longer than decedent’s whereas her father’s is shorter. This is not an equitable result. There is no doubt that Barbara has sustained a substantial injury from the loss of her mother’s counseling, guidance and continued nurture of her and her family, even though it is a loss which is difficult to measure precisely. However when contrasted with the husband’s loss, it is clear that the drastic change of circumstances occasioned by the loss of a wife, housekeeper and economic provider represents a substantially larger injury than the daughter’s.
This does not mean that the court is comparing the degree of grief or emotional pain suffered by the parties. Damages for loss of society remain noncompensable in wrongful death actions in New York.[3] Nor is the court resolving their disagreement over whether decedent was happily married. The travails of a marriage have relevance to the amount of pecuniary loss only if they result in diminishing the likelihood of continued support (cf., Loetsch v New York City Omnibus Co., supra), which was concededly not the case here.
In any event, when the financial contributions and the numerous constant and daily tasks decedent performed for her husband are juxtaposed against the more limited and intermittent services she performed for the daughter, and the other elements of their respective pecuniary losses are compared, the father’s injury is considerably larger. A consideration and evaluation of the relevant factors dictates a division of 75% of the wrongful death proceeds to the father and the remaining 25% to the daughter.

. See, e.g., Matter of Signs, 52 Misc 2d 634 (1967) (adult child not beyond reach of father’s care and bounty); Matter of Sintyago, 198 Misc 776 (1950) (adult child not dependent for support, no recovery); Hartman v Dermont, 89 AD2d 807 (1982) (no pecuniary loss to adult children where daughter claimed decedent was "advisor”); Estate of Rochelle, NYLJ, Dec. 16, 1978, at 12, col 1 (using Kaiser formula would have denied any recovery to adult children).

. For cases applying Kaiser (supra) to adult children, see, e.g., Estate of Fisher, NYLJ, May 7, 1985, at 15, col 6; Estate of Liburdi, NYLJ, Oct. 1, 1985, at 22, col 6; Estate of Jordan, NYLJ, Apr. 17,1990, at 25, col 5.

. New York is in the minority in so holding. As noted in Sea-Land, Servs. v Gaudet (414 US 573, 587, n 21 [1974]), 27 of the 44 wrongful death statutes permit recovery for loss of society with 10 statutes expressly providing for such damages and the remaining statutes so providing by judicial interpretation.