Leticia G. **GEDDES** and Barnabas B. **Breed, as executor of the Estate of Warren H. Geddes, deceased, Plaintiffs,**

v.

The **CESSNA AIRCRAFT COMPANY,** Defendant.

No. 88–CV–3513 (ASC).

United States District Court, E.D. New York.

April 3, 1995.

Daniel Donnelly, Garrison, NY, for plaintiffs.

Charles D. Donahue, Shanley & Fisher, P.C., New York City, for defendant.

*MEMORANDUM AND ORDER*

CHREIN, United States Magistrate Judge.

On January 9, 1995 I received the first draft of the "Order of Compromise" submitted by the plaintiffs in this case. By order dated January 12, 1995 I directed the parties to address a number of issues that concerned me regarding the proposed "Order of Compromise". I received a revised "Order of Compromise" from plaintiffs' attorney, Daniel Donnelly, Esq., dated February 21, 1995. After a careful review of the submissions, I am satisfied that the counsel fees are within the normal range for a case of this complexity, but the court is concerned with the proposed distribution of the settlement and has determined to appoint a guardian ad litem to represent the infants' interests.

**BACKGROUND:**

Decedent, Warren H. Geddes, died in a plane crash on November 17, 1986. This

action was instituted by the plaintiffs on November 7, 1988. This case was scheduled for trial before the undersigned on January 9, 1995. By letter dated December 21, 1994 Daniel Donnelly, Esq., informed the court that this matter had settled.

*Proposed Distribution of the Settlement:*

The order of compromise dated February 21, 1995 proposed that the $1,800,000.00 settlement[1] be distributed as follows:

$73,990.70 to ITT Hartford in satisfaction of its lien pursuant to § 29 of the New York Workers Compensation Law. The plaintiffs accept this in full discharge of its lien. The percent of each family member's share has been multiplied by the amount of the lien to determine the amount that each member will pay towards satisfaction of the lien. Thus, Leticia Geddes pays 66% ($48,833.86) of the lien, James pays 7% ($5,179.35), Philip pays 13% ($9,618.79) and William pays 14% ($10,358.70) of the lien.

$633,009.39 in attorney fees to Daniel Donnelly, Esq., as compensation for legal services rendered in this action to the plaintiffs, inclusive of costs and distributions paid by him and to be paid to him.

$753,056.75 to Leticia Geddes, representing the widow's pecuniary loss, including reimbursement of $101,890.61 for litigation expenses.

$66,855.65 to James Geddes, representing his pecuniary loss as Warren H. Geddes' 20 year old son.

$130,360.21 to Philip Geddes, representing his pecuniary loss as Warren H. Geddes' 13 year old son.

$142,727.30 to William Geddes, representing his pecuniary loss as Warren H. Geddes' 12 year old son.[2]

This distribution results in a departure from *In re Kaiser's Estate,* 198 Misc. 582, 100 N.Y.S.2d 218 (Kings Cty.1950), which is generally used by New York courts to allocate wrongful death proceeds. *See* Joseph and Robert S. Kelner, *'Kaiser' Revisited: Allocation of Wrongful Death Proceeds,* 212 N.Y.L.J. 3 (November 29, 1994). The court is concerned with two aspects of the proposed compromise order: the proposed distribution of the settlement and the fact that a guardian ad litem has not been appointed to represent the infants' interests.

### DISCUSSION:

*Distribution of the Settlement Proceeds:*

■ Wrongful death damages are for the exclusive benefit of the decedent's distributees and shall be distributed in proportion to the pecuniary injuries suffered by each distributee. N.Y. [EST.POWERS & TRUSTS] LAW § 5–4.4(a)(1) (McKinney 1981 &

---

1. This $1,800,000.00 sum is in settlement of all claims against the defendant, Cessna by the petitioners arising from the death of Warren H. Geddes on November 17, 1986. This sum shall be inclusive of all liens, including (without limitation) Workers' compensation liens, applicable to the proceeds of this action.

Defendant, Cessna is to dismiss with prejudice its counterclaim for contribution in this case and its third party claim for contribution against petitioners in *Dianne C. Conway, as Executrix of Estate of Gary L. Conway v. Air East Corp., et al.,* Index No. 22091/88, which is pending in Supreme Court, New York County.

The petitioners will ensure that the aircraft liability insurer of Warren Geddes (AVEMCO) pays Cessna, or its insurer, Associated Aviation Underwriters, $100,000.00, simultaneously with payment of the settlement funds and monies in this action, in settlement of Cessna's third-party claim against Petitioners in the *Conway* action.

All parties are to execute all documents required to settle the foregoing claims, counter-

claims and third party claims, and petitioners must execute a release and all other instruments as may be necessary or appropriate to complete the settlement of this action, which release is binding on the heirs and distributes of Warren H. Geddes. *See Order of Compromise, submitted February 21, 1995.*

2. Amounts payable to Philip and William Geddes are to be paid to and received by Leticia G. Geddes, as mother and natural guardian of Philip and William, together jointly with an officer of the Emigrant Savings Bank located at 200 Birch Hill Road, Locust Valley, New York 11560, to the credit of each of said infants. These funds shall be deposited in the above named bank in accounts paying the highest interest rate available. No withdrawals shall be made from these accounts before each infant reaches the age or eighteen years, except upon order of this Court. The bank shall also pay over to each infant all monies held, upon presentation of proper proof and that the filing of the bond be dispensed with. *See Order of Compromise, submitted February 21, 1995.*

Supp.1995). A surviving spouse can recover for the reasonable value of family responsibilities and household services that decedent would have performed, as well as the loss of support from the decedent's earning potential. *Estate of Feld,* 153 Misc.2d 615, 582 N.Y.S.2d 922, 923–924 (New York Cty.1992). The decedent's child is entitled to recover for the loss of financial support and lost parental care, guidance and love. *Id.,* 582 N.Y.S.2d at 924.

■ *In re Kaiser's Estate* allocates the proceeds received upon settlement of a wrongful death action to be distributed to decedent's spouse and next of kin based on the period they might reasonably have looked to the decedent for support. 100 N.Y.S.2d at 220. The formula considers the life expectancy of the surviving spouse and the life expectancy of the decedent, selecting whichever figure is lower, and the total number of years of estimated dependency of each child on the deceased, "... and divides the anticipated years of dependency of each distributee by the total, producing a percentage of the recovery for each distributee." Cerisse Anderson, *Old Formula Rejected for Death Settlements,* 207 N.Y.L.J. 1 (March 4, 1992). Dependency of the decedent's children is generally measured until the children reach twenty-one years of age. *Kaiser* recognized there may be cases where a departure from the mathematical percentages is necessary if there are special factors present, such as illness or dependency which may transcend those in the usual case. 100 N.Y.S.2d at 221.

■ The net proceeds of the wrongful death settlement would be distributed according to the *Kaiser* allocation as follows:[3]

## APPLICATION OF THE KAISER FORMULA:

| NAME | DATE OF BIRTH | AGE ON 11/17/86 | YEARS OF DEPENDENCY | PERCENTAGE INTEREST |
|------|---------------|-----------------|---------------------|---------------------|
| LETICIA GEDDES (widow) | 2/19/47 | 39 | 34.20[4] | 44.22% ($470,987.22) |
| JAMES GEDDES (son) | 5/23/74 | 12 | 8.51 | 11% ($117,161.00) |
| PHILIP GEDDES (son) | 6/1/82 | 4 | 16.54 | 21.39% ($227,824.89) |
| WILLIAM GEDDES (son) | 12/19/83 | 2 | 18.09 | 23.39% ($249,126.89) |

3. The amount of the *net settlement proceeds for distribution is* $1,065,100.00 after deducting expenses and legal fees.

| Total Wrongful Death Settlement Proceeds | $1,800,000.00 |
|---|---|
| Less Allocated Expenses | $ 202,350.00* |
| Less Legal Fees | $ 532,550.00 |
| Net Loss of Economic Support Available for Distribution | $1,065,100.00 |

*See Affidavit of Thomas R. Kershner, p. 3–4, dated January 6, 1995, annexed to Order of Compromise, submitted on January 9, 1995.*
* The allocated expenses category includes $101,890.61 to Leticia Geddes for reimbursement of litigation expenses incurred and $100,459.39 to Daniel Donnelly, Esq., for litigation expenses paid.

4. As previously stated, the *Kaiser* formula considers the life expectancy of the surviving spouse and the life expectancy of the decedent, selecting whichever figure is lower as the "years of dependency" figure. Warren H. Geddes was born on April 28, 1945, and was forty-one years old at the time of his death. His life expectancy was 34.20 years remaining at the time of his death. Leticia Geddes was born on February 19, 1947, and was thirty-nine years old at the time of Warren Geddes' death. Her life expectancy was 41.50 years remaining at the time of Warren Geddes' death. *See* 2 National Center for Health Statistics, *1990 Life Expectancy Tables* § 6, Table 6–3, p. 12.

The plaintiffs urge the court to depart from the method of distribution employed in the *Kaiser* decision. 100 N.Y.S.2d 218. They argue that the *Kaiser* method of computation is not entirely appropriate and possibly unfair to the surviving spouse because a significant portion of the total economic loss resulting from the decedent's death has been and will continue to be undertaken by the surviving spouse to support the decedent's children. The plaintiffs argue that the surviving spouse will use the majority of her settlement share to support the children, while the children's share will remain intact and in fact provide the younger children with a "nest egg" when they reach the age of majority. *See Affidavit of Thomas R. Kershner, p. 5, dated January 6, 1995, annexed to the Order of Compromise submitted on January 9, 1995.* The Geddes family enjoyed a very high standard of living during the dece-dent's lifetime and Mrs. Geddes has attempted to provide a comparable standard of living for their children since the decedent's death eight years ago. *Id.* at 8. Plaintiffs assert that Mrs. Geddes has annually expended $92,046.00 to maintain the Geddes household. This amount includes expenditures for the mortgage, property and school taxes, heat, electricity, telephone, property and home maintenance as well as food. Plaintiffs assert that the amount of past support provided to the Geddes children since the decedent's death amounts to at least $408,154.00. Leticia Geddes has received $104,155.00 in Social Security benefits for the three children, thus, her net family support payments are $303,999.00. *Id.* at 9–10.

The plaintiffs propose the following distribution of the $1,065,100.00 net settlement proceeds:

| NAME | PROPOSED % | | KAISER % | |
|---|---|---|---|---|
| Leticia Geddes | 65.72% | ($700,000.00) | 44.22% | ($470,987.22) |
| James Geddes | 6.76% | ($72,035.00) | 11.00% | ($117,161.00) |
| Philip Geddes | 13.14% | ($139,979.00) | 21.39% | ($227,824.89) |
| William Geddes | 14.37% | ($153,086.00) | 23.39% | ($249,126.89) |

The plaintiffs recommend that these proposed amounts be reduced by the amount of each distributee's share of the workers compensation lien. The plaintiffs propose that each survivor pay their proposed percentage of the $73,990.70 lien, thus, Leticia would pay 66% ($48,833.86), James would pay 7% ($5,179.35), Philip would pay 13% ($9,618.79) and William would pay 14% ($10,358.70) of the lien.

The *Kaiser* formula has been criticized as operating unfairly in certain circumstances. In *Estate of Feld* the court criticized the *Kaiser* formula as often producing inequitable results. 582 N.Y.S.2d at 924. Commonly cited problems with the *Kaiser* formula include situations where there is no surviving spouse and the children are in their teens and application of the formula entitles the younger child to a sum significantly in excess of what the age difference and relative injury warrant; the children will most likely receive less than their equitable share where both the decedent and surviving spouse are young; or the formula fails to take into consideration differences among the distributees, such as a mental or physical illness. *Id.*, 582 N.Y.S.2d at 924–925.

Surrogate Preminger refused to apply the Kaiser formula in future cases, stating that

[t]here is, ..., a fundamental and incurable defect in Kaiser. The formula considers only the difference in the number of years of estimated dependency of each distributee and assumes, incorrectly, that in each year each distributee is entitled to an equal amount. This is an unfounded and inaccurate assumption. The pecuniary loss suffered by a spouse and a child differ from each other in amount, method of computation, and underlying legal theory.... Even the most superficial analysis demonstrates that computing a spouse's and a child's annual loss is not likely to produce amounts that are identical. Because Kai-

ser makes this invalid assumption, it will not yield a correct result in a statistically or equitably acceptable number of instances. *Id.* at 925.

The court held one must still examine the duration of anticipated support when allocating proceeds among the distributees, however that is only one of the many factors to examine when deciding the appropriate distribution. *Id.,* 153 Misc.2d at 620, 582 N.Y.S.2d at 926.

The cases that have departed from the traditional *Kaiser* approach, however, usually award a greater percentage to the children and not to the surviving spouse. *Application of Adler,* 869 F.Supp. 1021, 1029 (E.D.N.Y. 1994). *See also Estate of Singleton,* 96 Misc.2d 169, 408 N.Y.S.2d 691 (1978) (The Court departed from the *Kaiser* formula to increase the infant's share from thirty percent to fifty percent, thereby decreasing the surviving spouse's share approximately twenty percent.); *Matter of Estate of Duffy,* 208 A.D.2d 1169, 617 N.Y.S.2d 588 (3rd Dept. 1994) (The decedent had nine children ranging in age from 19–30 at the time of decedent's death and no surviving spouse. The court decided to depart from *Kaiser* and found that all of the decedent's children suffered pecuniary loss, not just the two children that were under twenty-one at the time of decedent's death.); *Matter of Acquafredda,* 189 A.D.2d 504, 596 N.Y.S.2d 839 (2d Dept.1993) (The court departed from the *Kaiser* formula by dividing the settlement in equal one-third shares among the decedent's widow and the two children, instead of awarding 55.6% to the mother and 21.2% and 23.3% to the two children.); *Matter of Palazzo,* N.Y.L.J., September 4, 1984, at 14, (reducing widower's share from 71% to 60%); and *Application of Adler,* 869 F.Supp. 1021 (E.D.N.Y.1994) (court decreased the mother's share under the *Kaiser* formula by 14.5% to increase the shares of the decedent's five children).

The plaintiffs request the court to authorize a greater distribution to the surviving spouse, Leticia Geddes, which in turn reduces the amount of recovery for the three children, James, Philip and William. While the *Kaiser* formula is accepted in federal courts, this court is under no obligation to apply the rigid mathematical formula of *Kaiser. See In re Cook's Estate,* 63 Misc.2d 537, 312 N.Y.S.2d 210, 212 (1970); *Application of Adler,* 869 F.Supp. 1021 (E.D.N.Y.1994); and *Matter of Acquafredda,* 189 A.D.2d at 506, 596 N.Y.S.2d at 840. However, I can not authorize a twenty-two percent increase for Mrs. Geddes' share over the share she would receive under *Kaiser* without some authority and sufficient circumstances to support such an increase.

The plaintiffs cite *In re Cook's Estate* to support departing from the *Kaiser* formula. 312 N.Y.S.2d 210. They cite *Cook* to support the proposition that the support provided by the surviving spouse between the date of the accident and the date of the settlement should be reimbursed to the spouse. The facts in the *Cook* case are similar to the facts of the instant case in that the decedent was killed in an airplane accident and left a surviving spouse and three children. The petitioner in *Cook* proposed a distribution of 66.7% to the widow, 10.38% to Arvilla, 10.76% to Julia, and 12.16% to Merriam. The special guardians argued that such a distribution was unfair and proposed adherence to the *Kaiser* formula, thereby allocating 49.22% to Mrs. Cook, 13.72% to Arvilla, 15.4% to Julia and 21.66% to Merriam. The court held that the use of the *Kaiser* formula was appropriate with adjustments for contributions the surviving spouse made. *Id.,* 312 N.Y.S.2d at 214. The widow made contributions for the family from the date of the accident to the date of the "expected trial" which exceeded the amount the father would have contributed, thus, the court held the children have suffered no loss for this period. *Id.* at 211. These contributions are valued at $41,250.00 but petitioner must pay a $14,000.00 workers compensation lien leaving a total of $27,-250.00 to be paid to petitioner directly from the settlement amount. The balance was distributed according to the *Kaiser* formula. *Id.,* 312 N.Y.S.2d at 214–215.

Reimbursing the surviving spouse for her expenditures and then using the *Kaiser* formula to distribute the remaining proceeds seems to be a fair distribution of the settlement proceeds. I would not be opposed to

reimbursing the plaintiff, Leticia Geddes, for expenditures she had made for the sole benefit of the children, thereby reducing their pecuniary loss over the past eight years. The court, however, requires detailed proof of these expenditures. It is not enough to receive submissions regarding household expenses which arguably benefit Mrs. Geddes, as well as the children. The plaintiffs are directed to make a submission detailing expenditures made on behalf of William, Philip and James Geddes which reduced the amount of their pecuniary loss since their father's death, no later than May 1, 1995.

*Appointment of a Guardian Ad Litem:*

■ The appointment of a guardian ad litem to protect the interests of infants is a procedural question governed by Rule 17(c) of the Federal Rules of Civil Procedure. Rule 17(c) states in part that "[t]he court shall appoint a guardian ad litem for an infant ... not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant...." *See Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35 (5th Cir.1958). This rule does not mandate that a guardian ad litem be appointed whenever an infant is a party to a suit. In fact, District Courts should attempt to decrease costs by refraining from appointing guardians unless there is a substantial likelihood that a conflict of interest may exist and an infant may need protection. *United States of America v. Noble*, 269 F.Supp. 814, 816 (E.D.N.Y.1967). *See also Ruppert v. Secretary of U.S. Dept. of Health and Human Services*, 671 F.Supp. 151, 173 (E.D.N.Y.1987), *aff'd in part and rev'd in part*, 871 F.2d 1172 (2d Cir.1989). A guardian does not have to be appointed if the infant's interests are amply represented and protected. *Roberts*, 256 F.2d at 39. The trial judge must, however, give due consideration to the "propriety of an infant's representation by a guardian ad litem before he may dispense with the necessity of appointing the guardian." *Id.* at 39.

■ Leticia Geddes states that the unity of their family has been strained, at times, due to the loss of Warren H. Geddes. As a result of their father's death, one son "became directionless [sic] and ultimately found himself in trouble with the law." Another son has developed an Attention deficit disorder. Leticia Geddes claims that these problems have strained her family's tranquility and cohesiveness. Therefore, she requests that the proceedings be completed without the intervention of any other influences which could further jeopardize her family. *See Affidavit of Leticia G. Geddes In Support of Relief Sought In Petition For Leave To Compromise Claim, dated February 21, 1995.*

In addition, plaintiffs' attorney argues that the amount given to the children of Warren Geddes is "so demonstrably fair, diminishing the survivors' benefit by incurring the expenses attendant to appointing a guardian ad litem would be unnecessary and wasteful." *See Plaintiff's Supplemental Verified Petition For Leave To Compromise A Claim For Wrongful Death. For Apportionment Of Damages: And, For Other Relief, dated February 21, 1995, p. 3.*

To date a guardian ad litem has not been appointed to represent the infants' interests in this matter because the court has been hesitant to unnecessarily align parent against child and needlessly cause family disharmony. In addition, I did not want the net settlement proceeds to be needlessly diminished by fees resulting from the appointment of a guardian ad litem. However, the proposed settlement distribution suggests that the appointment of a guardian ad litem is necessary. It is clear that Mrs. Geddes' interests and the interests of her children are in conflict. If the court adopts the proposed compromise order the children will receive substantially smaller shares than those awardable under the *Kaiser* formula. As previously discussed, *Kaiser* does not have to be followed and in fact may not be the best method of allocation under these circumstances, however, it is not fair to have the infants unrepresented. The court does not wish to imply that Mrs. Geddes is unable or unwilling to protect the interests of her children, however there is a conflict of interest and the court must appoint a guardian ad litem as a matter of proper procedure. *See Roberts*, 256 F.2d at 39. The court shall appoint a guardian ad litem to represent the

infants' interests in regard to the distribution of the settlement proceeds and will notify the parties as soon as a guardian is appointed.

**SO ORDERED.**