[No. D048962. Fourth Dist., Div. One. Jan. 26, 2007.]

BRADLEY WILLIAMS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
KATHLEEN MAYES, Real Party in Interest.

**COUNSEL**

Higgs Fletcher & Mack, John Morris; Law Offices of Richard A. Williams and Richard A. Williams for Petitioner.

No appearance for Respondent.

Niddrie Fish & Buchanan and David A. Niddrie for Real Party in Interest.

**OPINION**

**HALLER, Acting P. J.**—In this writ proceeding, a father challenges the trial court's appointment of the maternal grandmother as the guardian ad litem for

his minor daughters in their wrongful death action to recover for their mother's death in an automobile collision. The father contends the court's appointment of the maternal grandmother violated his fundamental rights to the care, custody and control of his children. We conclude the contention is without merit. Because the father elected to bring an action on behalf of his daughters and had a conflict of interest with his daughters because he also sought his own recovery, the court's selection of a qualified guardian ad litem did not improperly interfere with the father's rights, even if the father would have preferred his own parents to serve in that role.

## FACTS

Jennifer Williams was killed when her car was struck head-on by a tow truck. At the time of the accident, Jennifer was married to Bradley Williams (Father), but they had been living separately for approximately five months. The couple's two young daughters, Lauren (age eight) and Victoria (age four), were living with Jennifer. Father was paying child support and visited frequently with the girls. Since their mother's death, Lauren and Victoria have lived with Father.

Approximately seven weeks after Jennifer died, Father brought a wrongful death action against the tow truck driver, the tow truck company, and various other related entities. The complaint named Father, Lauren, and Victoria as plaintiffs, and identified Attorneys Richard Feuerstein and Lee Lawless as guardians ad litem for the girls. Father and the daughters were represented by the same counsel (Richard A. Williams).[1] Two days later, Father filed a petition requesting the court to appoint Feuerstein and Lawless as guardians ad litem for the girls. Father identified these guardians as certified family law specialists and stated he believed they would protect his children's best interests. The court granted the petition the next day.

Shortly thereafter, Jennifer's mother, Kathleen Mayes (Maternal Grandmother), filed a petition seeking to replace the appointed guardians ad litem. Maternal Grandmother asserted that because of a financial conflict between Father and the minors in the proceeds of the wrongful death action, it was inappropriate for the parties to be represented by the same counsel. Maternal Grandmother detailed the facts regarding the couple's separation and their intention to file for dissolution. Maternal Grandmother said that Father's attorney had told her the wrongful death award would be divided equally between Father and the girls, and requested Maternal Grandmother testify in support of Father at the wrongful death trial. When Maternal

---

[1] Attorney Richard A. Williams is not related to Father or any of the parties to this action. All further references to Williams are to Attorney Richard A. Williams.

Grandmother refused this request and suggested that the girls should be the primary beneficiaries of any award, Father's attorney discontinued his communications with her.

Father opposed the petition, arguing that Maternal Grandmother had no standing because she was not a party to the action. Father also asserted that there was no need to appoint Maternal Grandmother because he had already "recogniz[ed] the potential conflict that may exist in the distribution of any potential proceeds" and had obtained the appointment of two "well qualified family law specialists" to serve as the guardians ad litem.

At the hearing on Maternal Grandmother's petition, the trial court (Judge Linda Quinn) expressed substantial concern that the guardians ad litem intended to charge $300 per hour for their services, and repeatedly asked Attorney Williams to identify the reasons that the Maternal Grandmother (who was willing to serve without compensation) could not perform the role. The court noted that grandparents routinely serve as guardians ad litem for their grandchildren in similar situations. At the end of the hearing, the court ordered the parties to mediation on the guardian ad litem issue. The court set a March 17 hearing if the parties did not resolve the guardian ad litem issue at the mediation.

One day before the parties were to attend the mediation, on February 21, Father's attorney filed a voluntary dismissal of the case without notifying Maternal Grandmother or her attorney. The clerk's office entered the dismissal on that date.

The next day, a mediation was held on the guardian ad litem issue. The participants included Father, Maternal Grandmother, their attorneys, the two guardians ad litem, and counsel handling probate matters. The mediation lasted several hours, but the parties were unable to reach an agreement. Despite the lengthy mediation, Father did not tell Maternal Grandmother or her attorney that he had dismissed the case.

One day later, Maternal Grandmother's counsel (Cynthia Chihak) called the superior court clerk's office regarding a question about filing briefs for the next hearing, and was surprised to learn that Attorney Williams had dismissed Father's lawsuit the day before the mediation.

The next day, on February 24, Maternal Grandmother filed an ex parte application with Judge Quinn, reasserting her arguments that Father had a serious conflict of interest, and asking that Maternal Grandmother be appointed guardian ad litem and that the lawsuit be reinstated. Maternal Grandmother gave Father notice of the motion and the hearing date. Father

filed an opposition, stating that Maternal Grandmother had no standing because the case had been dismissed. Father also argued that Maternal Grandmother could not bring a lawsuit on his children's behalf because the decision to file a lawsuit lies exclusively with the parent. He stated that he had the "absolute right to decide which attorney will represent his minor children . . . ."[2]

The hearing on Maternal Grandmother's ex parte application was held three days later, on February 27. Counsel for both parties appeared. At the hearing, Father's counsel reiterated that the court had no jurisdiction over the matter because Father had dismissed the lawsuit, and stated that he had dismissed the action because a decision had been made that "[t]here needed to be some slowing down, there needed to be some healing. . . ." At the conclusion of the hearing, the court denied Maternal Grandmother's motion because it no longer had jurisdiction of the case once the dismissal was filed. The court stated the denial was based only on this "procedural issue" and that it was not ruling on the viability of any new lawsuit Maternal Grandmother may choose to file.

Within minutes of the hearing's conclusion, at 9:42 a.m., Maternal Grandmother filed a new wrongful death action on behalf of Lauren and Victoria. Father was named as a nominal defendant.[3] Maternal Grandmother also filed an application to serve as guardian ad litem for the girls, but did not include any information about Father's objections to her appointment or the circumstances surrounding the recently dismissed action. The clerk telephoned Judge Quinn to inquire if she wished the case to be assigned to her department, but Judge Quinn indicated the case should proceed through random judicial selection and the case was assigned to Judge Kevin Enright. Maternal Grandmother did not notify Father of this new lawsuit or her guardian ad litem application.

Approximately five hours later, Father's parents (Paternal Grandparents) filed a separate wrongful death action in a different division of the San Diego County Superior Court (the East County Division) on behalf of Lauren and Victoria. The complaint was filed by a new counsel, Robert Ingram, who had been retained by Father for his daughters. Father was named as a nominal defendant. On the same day, Father filed a petition for appointment of the Paternal Grandparents as guardians ad litem in this new action. Neither

---

[2] Father's counsel also sent a letter to Maternal Grandmother's counsel, and asked her to lodge the letter with the court at the hearing because he was unsure he would be able to attend. However, the letter was not submitted because Attorney Williams appeared at the hearing.

[3] In a wrongful death action, all survivors must be joined in one action; a survivor who declines to be named may be named as a nominal defendant. (See Code Civ. Proc., § 377.60; *Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801, 807–808 [62 Cal.Rptr.2d 78].)

Father nor the Paternal Grandparents notified Maternal Grandmother of this lawsuit or the guardian ad litem application. Father likewise did not inform the court about Maternal Grandmother's prior request to be appointed guardian ad litem or the circumstances surrounding his recently dismissed action.

On March 6, the superior court in Maternal Grandmother's action (Judge Enright) approved Maternal Grandmother's guardian ad litem application and appointed her as the guardian ad litem for Lauren and Victoria. Because Judge Enright was unaware of any opposition, he granted the application as a routine ex parte matter. Maternal Grandmother thereafter served all named defendants with the complaint, including the tow truck driver, the tow truck company owner, and Father.

Meanwhile, on March 9 and March 14, a superior court judge from the East County Division of the superior court (Judge Eddie Sturgeon) approved Father's request that the Paternal Grandparents be appointed guardians ad litem in the Paternal Grandparents' action. As with Judge Enright, Judge Sturgeon granted this application as a routine ex parte matter because he was unaware of Maternal Grandmother's action and Father's prior dismissed action. In early April, Paternal Grandparents served the named defendants with the complaint.

Maternal Grandmother then filed a notice of related action, and requested Judge Enright to dismiss the Paternal Grandparents' action and confirm the validity of her wrongful death action. In her motion papers, Maternal Grandmother stated that she invited Father to become a plaintiff in the case and to keep his own attorney, but he declined.

Father opposed the motion and brought his own motions to (1) remove Maternal Grandmother as guardian ad litem; and (2) strike Maternal Grandmother's complaint.[4] The crux of Father's argument was that the appointment of Maternal Grandmother was wrong because it interfered with his "legal and natural right[] to care for his . . . own children" and reflected a flawed public policy that would permit "strangers" to "rac[e] to the court-house to file lawsuits on behalf of minor children" without the parent's notice or consent. Paternal Grandparents filed a joinder in Father's motions.[5]

---

[4] The motion to strike the complaint was designated as a "combined" demurrer, motion to strike, motion for judgment on the pleadings, and motion to dismiss. Because the particular procedural vehicle used by Father to seek the dismissal is not relevant here, we will refer to these motions collectively as Father's motion to strike the complaint.

[5] Although Paternal Grandparents moved to join the motion to strike, they had no standing to do so because they were not parties to the action. The court allowed Paternal Grandparents

In an accompanying declaration, Father said that he and Maternal Grandmother do not "share the same values concerning my children," and that Maternal Grandmother's insistence on being involved in "every aspect of [the wrongful death claims] has caused quite a strain on my family's contacts with [Maternal Grandmother]." Father claimed that Maternal Grandmother "is too emotionally unstable to make any decisions for my children." Father also stated that Maternal Grandmother did not have a close relationship with the girls and has frequently declined to visit with them following their mother's death. Father claimed that, unlike Maternal Grandmother, the Paternal Grandparents "have had a long, loving relationship with my children" and have attended numerous family functions.

In a supplemental declaration, Father added that during his marriage he and Maternal Grandmother had "strong philosophical differences" on how his children were to be raised, and that Maternal Grandmother repeatedly attempted to insert her beliefs concerning religion, education and family values into his family, causing "much stress in our marriage." Father additionally stated that based on his "previous experiences" with Maternal Grandmother, he believes she will use her position as guardian ad litem "to attempt to control [his] children's lives for the foreseeable future" and "inject her beliefs upon [his] children." He claimed, for example, that he believed her guardian ad litem appointment would result in him "los[ing] [his] parental right[s]" because she may involve herself in the family in the guise of protecting the children's best interests, including by "com[ing] to [his] residence on unannounced 'visits,' . . . visit[ing] their school or day care," and "tak[ing] the children to Ms. Chihak's office to be interviewed and/or deposed." The Paternal Grandparents submitted declarations stating that they would abide by their obligation to protect the interests of their grandchildren and confirming that they would take seriously their obligations to protect their grandchildren's interests, "no matter what the impact on our son's claim."

Maternal Grandmother opposed Father's motions and filed a motion to "coordinate, consolidate and/or transfer" the related case. Maternal Grandmother argued that (1) her case had priority of jurisdiction based on the date of the service of process; and (2) a conflict of interest existed in the representation of the minors by Attorney Ingram because the Paternal Grandparents and Attorney Ingram were nominated by Father.

In support, Maternal Grandmother filed her declaration, which included the following: At the time of Jennifer's death, Jennifer and Father were separated, and did not intend to reconcile. They began living apart in July 2005, when Father purchased Jennifer's interest in the family home and Jennifer bought a

---

to file briefs and their counsel to argue at the hearing, but its final ruling reflects that it recognized that only Father had standing to bring this motion.

residence in her own name. Maternal Grandmother was very close with Jennifer, and was an occasional caregiver for the children. Within weeks of Jennifer's death, Attorney Williams contacted Maternal Grandmother and said he was hired by Father to bring a lawsuit on behalf of Father and his daughters. Williams said that "he would recover millions" and asked Maternal Grandmother to testify "as to the strength of the marital relationship." Maternal Grandmother replied that she would testify truthfully about the problems in the relationship, and although she did not oppose Father receiving "something," she believed the vast majority of any recovered damages should be awarded to the girls. However, Williams's response made it appear that he was focused only on "protecting his own and [Father's] financial interests in conflict with those of Lauren and Victoria." Maternal Grandmother thus retained "experienced personal injury counsel in an effort to determine what the children's rights may be," and thereafter elected to file the guardian ad litem application. Maternal Grandmother stated that in seeking this appointment, "[i]t is not my hope or my belief that the family relationship between myself and my grandchildren or their . . . relatives should be affected by this lawsuit. But, I do not believe that any attorney affiliated with [Father] can represent these children's interests without a conflict. . . . [¶] I am not opposed to [Father] becoming a plaintiff, having representation, or input in how the litigation is being conducted."[6]

The court (Judge Enright) issued a tentative ruling denying Father's motions to remove Maternal Grandmother as the guardian ad litem and to dismiss the lawsuit. At the ensuing hearing, Father's counsel argued that the court's initial appointment of Maternal Grandmother was invalid because Maternal Grandmother did not notify the court of Father's objection to the appointment. However, Judge Enright stated he was not inclined to base his ruling on this fact given counsel's highly questionable conduct in dismissing the prior action and then participating in the mediation session without notifying Maternal Grandmother of the dismissal. The court emphasized that its ruling on the guardian ad litem issue was based on a consideration of the "whole situation," including equitable and fairness concerns. Father's counsel countered that the primary issue before the court was the question of "the fundamental right of a parent" to make the decision as to who should be the guardian ad litem for the children. Father's counsel also argued that a ruling in Maternal Grandmother's favor because she was the first to file the action would give an incentive for distant relatives or strangers to race to the courthouse to file an action on behalf of the children. Maternal Grandmother's counsel responded that the court's tentative ruling was proper because it was an equitable determination and Maternal Grandmother "has no interest . . . of doing [anything] other than protecting her grandchildren's rights."

---

[6] Attorney Williams filed a declaration denying Maternal Grandmother's version of their conversation, and other matters asserted in Maternal Grandmother's declaration.

After taking the matter under submission, the court issued a written order confirming the tentative ruling. The order stated Maternal Grandmother was properly appointed as guardian ad litem under the applicable statutes and local rules, and that a "surviving father's parental rights do not take precedence over a grandparent's legal appointment as a guardian ad litem." The court also found the cases relied upon by Father to be distinguishable because those decisions arose in the juvenile dependency context and involved guardians ad litem appointed for parents found to be incompetent. (See *In re C. G.* (2005) 129 Cal.App.4th 27 [27 Cal.Rptr.3d 872]; *In re Daniel S.* (2004) 115 Cal.App.4th 903, 912 [9 Cal.Rptr.3d 646]; *In re Jessica G.* (2001) 93 Cal.App.4th 1180 [113 Cal.Rptr.2d 714].) With respect to Maternal Grandmother's motions to coordinate, consolidate and/or transfer the Paternal Grandparents' case, the court stated the proper remedy was abatement: "[Maternal Grandmother's action] has priority of jurisdiction. It was filed first and service was made first compared to the [Paternal Grandparents'] case. The case that first acquires jurisdiction of the parties is entitled to retain exclusive jurisdiction. (*Mungia v. Superior Court* (1964) 225 Cal.App.2d 280, 283 [37 Cal.Rptr. 285]."

Father then filed a writ petition requesting this court to order the superior court to remove Maternal Grandmother as guardian ad litem and strike Maternal Grandmother's complaint. Father asserted that his constitutional rights had been violated, and argued that writ review was necessary because the guardian ad litem ruling would not be appealable after a final judgment. Paternal Grandparents later filed a joinder in the writ petition, but did not file separate briefs.[7] We issued an order to show cause, and provided the parties the opportunity to file additional briefing and to present oral argument. After further considering the parties' contentions, we deny Father's writ petition.

## DISCUSSION

### I. *Legal Principles Governing Guardians Ad Litem*

■ A minor who is a party in a lawsuit must appear " 'by a guardian ad litem appointed by the court in which the action or proceeding is pending . . . .' (Code Civ. Proc., § 372, subd. (a) . . . .)" (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1356 [96 Cal.Rptr.2d 285]; accord, *In re Josiah Z.* (2005) 36 Cal.4th 664, 678 [31 Cal.Rptr.3d 472, 115 P.3d 1133].) If the minor is under 14 years old and is a plaintiff, "the appointment must be made before

---

[7] Because Paternal Grandparents were not parties in the lawsuit below, they cannot join as petitioners in this writ proceeding challenging the court's refusal to dismiss Maternal Grandmother's lawsuit. Without objection from the other parties, Paternal Grandparents' counsel participated in the appellate oral argument.

the summons is issued, upon the application of . . . a *relative or friend* of the minor." (Code Civ. Proc., § 373, subd. (a), italics added.) The appointment may be made on an ex parte application. (*In re Marriage of Caballero* (1994) 27 Cal.App.4th 1139, 1149 [33 Cal.Rptr.2d 46].) A court has broad discretion in ruling on a guardian ad litem application. (*In re Emily R., supra,* at p. 1356.) " 'In the absence of a conflict of interest . . . , the appointment is usually made on application only and involves little exercise of discretion.' " (*In re Marriage of Caballero, supra,* at p. 1149.)

The purpose of a guardian ad litem is to protect the minor's interests in the litigation. (*Briggs v. Briggs* (1958) 160 Cal.App.2d 312, 319 [325 P.2d 219]; see *In re Josiah Z., supra,* 36 Cal.4th at p. 678; *In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453 [23 Cal.Rptr.2d 918].) A guardian ad litem is not a party to the action, but is the party's representative and is an officer of the court. (*In re Josiah Z., supra,* 36 Cal.4th at p. 678; *In re Marriage of Caballero, supra,* 27 Cal.App.4th at p. 1149.) The guardian ad litem " ' " 'is like an agent with limited powers.' " ' " (*In re Marriage of Caballero, supra,* 27 Cal.App.4th at p. 1149.) " '[A] guardian ad litem's role is more than an attorney's but less than a party's. The guardian may make tactical and even fundamental decisions affecting the litigation but always with the interest of the guardian's charge in mind. Specifically, the guardian may not compromise fundamental rights, including the right to trial, without some countervailing and significant benefit.' " (*Ibid.*; accord, *In re Josiah Z., supra,* 36 Cal.4th at p. 678.) Thus, when considering the appropriate guardian ad litem for a minor plaintiff in a civil lawsuit, the central issue is the appropriate protection of the minor's legal right to recover damages or other requested relief.

Under the San Diego County Superior Court local rules, "parents asserting individual claims or defenses may not serve as guardians ad litem for their minor children, absent a court order to the contrary. Petitions for appointment of a guardian ad litem must be filed at the same time as the underlying complaint is filed." (Super. Ct. San Diego County, Local Rules, rule 2.4.6.)

## II. *The Scope of Father's Contentions in This Writ Proceeding*

Before discussing Father's challenges to the court's order, it is important to make clear what is not at issue in this writ proceeding.

First, Father does not contend the court's selection of Maternal Grandmother violated the applicable guardian ad litem statutes. We agree. The Legislature expressly identified a "relative" as a proper person to serve as a minor's guardian ad litem (Code Civ. Proc., § 373, subd. (a)), and the statutes contemplate that the appointment will be based on an ex parte

application by the proposed guardian ad litem (since generally no party has been served until the appointment is made). Further, there is no specific statutory requirement that a parent be notified if a nonparent applies to serve as the guardian ad litem.

Second, Father recognizes that he has "at least a potential conflict of interest" because he and his children are coclaimants in the wrongful death action and therefore he cannot serve as their guardian ad litem. Thus, Father agrees it is necessary to appoint an independent guardian who cannot be subject to Father's control. Therefore, the issue of whether there is a statutory preference for a parent to serve as a guardian ad litem is not before us.[8]

Third, Father has made clear that he desires his children to bring a lawsuit to recover wrongful death damages against the named defendants, and that he wants the litigation to go forward at the earliest possible time. Thus, this is not a case about a parent's right to object to his or her children's participation in a civil lawsuit, or whether a parent has the right to decide when that litigation should be brought or who should be named in that action.

Fourth, Father acknowledges he is not seeking an inquiry as to who is better qualified to serve as the guardian ad litem, Maternal Grandmother or Paternal Grandparents. He explains that the issue of the "relative-qualifications" of the two sets of grandparents "was not joined as part of [his] motions." (Italics omitted.)

We now move to what this case *is* about.

### III.   *Father's Constitutional Argument*

As the primary basis of his writ petition, Father contends that "*he*—as the children's biological *father* and sole custodial *parent*—has the primary right to decide . . . [which] independent person is best qualified to represent his minor children." He contends he has this "unfettered" right despite that he has a potential conflict of interest with his children.

In support of this argument, Father relies on the constitutional principle that parents have the right to direct the upbringing of their children without

---

[8] California courts have reached different conclusions on this issue. In *D. G. v. Superior Court* (1979) 100 Cal.App.3d 535 [161 Cal.Rptr. 117], the court rejected the mother's argument that she has a statutory right to preference as the guardian ad litem for her child. (*Id.* at pp. 545–546.) But in *State of California v. Superior Court* (1978) 86 Cal.App.3d 475 [150 Cal.Rptr. 308], the court recognized a parent's "preferential status" in seeking a guardian ad litem appointment. (*Id.* at p. 482, disapproved on other grounds in *Hernandez v. County of Los Angeles* (1986) 42 Cal.3d 1020, 1027 [232 Cal. Rtpr. 519, 728 P.2d 1154].)

governmental interference. We agree with this general principle. The United States Supreme Court has held that the liberty interest in "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." (*Troxel v. Granville* (2000) 530 U.S. 57, 66 [147 L.Ed.2d 49, 120 S.Ct. 2054] (plur. opn. of O'Connor, J.); see also *Pierce v. Society of Sisters* (1925) 268 U.S. 510, 534–535 [69 L.Ed. 1070, 45 S.Ct. 571]; *Meyer v. Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 43 S.Ct. 625].) California courts have likewise recognized that parents have the overriding right to make decisions about the care and management of their children, even if the state believes it could make better decisions. (See *Kyle O. v. Donald R.* (2000) 85 Cal.App.4th 848, 862 [102 Cal.Rptr.2d 476]; *Adoption of Baby Boy D.* (2001) 93 Cal.App.4th 1, 10 [112 Cal.Rptr.2d 760].) The parents' right to raise their children "is a compelling one, ranked among the most basic of civil rights." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

But this right is not absolute. (See *Prince v. Massachusetts* (1944) 321 U.S. 158, 166–167 [88 L.Ed. 645, 64 S.Ct. 438]; *Manzano v. South Dakota Dept. of Social Services* (8th Cir. 1995) 60 F.3d 505, 510.) Of particular relevance here, it has long been recognized that a trial court has the responsibility to protect the rights of a minor who is a litigant in court (see *Cole v. Superior Court* (1883) 63 Cal. 86, 89; *Serway v. Galentine* (1946) 75 Cal.App.2d 86, 89 [170 P.2d 32]), and in this role the court has the inherent authority to make decisions in the best interests of the child, even if the parent objects. (See *Johns v. County of San Diego* (9th Cir. 1997) 114 F.3d 874, 877 [rejecting the father's contention that requiring the father to retain lawyer to represent minor son in civil lawsuit interferes with constitutional rights to direct son's religious upbringing].) This judicial protection of minors encompasses a court's authority to select a guardian ad litem who is not the parent or general guardian. (*Geddes v. Cessna Aircraft Co.* (E.D.N.Y. 1995) 881 F.Supp. 94, 100–101 [appointing guardian ad litem in damages phase of wrongful death action over mother's objections that the appointment would further strain "her family's tranquility and cohesiveness"]; see *Ad Hoc Com. v. Greenburgh No. 11 U. Free School D.* (2d Cir. 1989) 873 F.2d 25, 30; *Hoffert v. General Motors Corp.* (5th Cir. 1981) 656 F.2d 161, 164; *Von Bulow v. Von Bulow* (S.D.N.Y. 1986) 634 F.Supp. 1284, 1293.) "When there is a potential conflict between a perceived parental responsibility and an obligation to assist the court in achieving a just and speedy determination of the action," a court has the right to select a guardian ad litem who is not a parent if that guardian would best protect the child's interests. (*M. S. v. Wermers* (8th Cir. 1977) 557 F.2d 170, 175.) A minor " 'is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done him. The guardian

ad litem is appointed merely to aid and to enable the court to perform that duty of protection.' " (*DuPont v. Southern Nat. Bank of Houston, Tex.* (5th Cir. 1985) 771 F.2d 874, 882; see *Serway v. Galentine, supra,* 75 Cal.App.2d at p. 89 ["court is, in effect, the guardian of the minor and the guardian *ad litem* is but an officer and representative of the court"].)

■ To the extent Father is asking us to depart from this well-settled authority and create a new federal constitutional right for a parent to select a guardian ad litem *even where the parent has a conflict of interest,* we decline to do so.

■ First, as Father concedes, if the parent has an actual or potential conflict of interest with his child, the parent has no right to control or influence the child's litigation. Thus, it cannot logically follow that a parent has the absolute right to select the appropriate guardian ad litem. Under the circumstances, the selection would inevitably put the replacement guardian in a continued conflict of interest. (See *Brown v. Fair Political Practices Com.* (2000) 84 Cal.App.4th 137, 145 [100 Cal.Rptr.2d 606] [noting a conflict of interest problem persists if a person with a conflict of interest selects his or her replacement]; *Affordable Housing Alliance v. Feinstein* (1986) 179 Cal.App.3d 484, 492–493 [224 Cal.Rptr. 557].) Father contends a court should presume a parent would pick an "independent" guardian based on the presumption that a "fit" parent acts in the child's best interests. (*Troxel v. Granville, supra,* 530 U.S. at p. 68.) However, this general presumption does not apply when the parent has a conflict of interest. A parent with a conflict of interest in a lawsuit is no longer a "fit" parent for the narrow purposes of controlling litigation decisions on behalf of the child.

Moreover, unlike the state actions that have been found to unconstitutionally interfere with a parent's fundamental rights to make child-rearing decisions, a court's selection of a guardian ad litem does not substantially affect a parent's control over his or her child or " 'inject [the state] into the private realm of the family.' " (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 224 [17 Cal.Rptr.3d 842, 96 P.3d 141].) A guardian ad litem's role is limited to protecting the child's interests *in the litigation,* and the role is closely supervised by the judge. In this limited role, a guardian ad litem does not have the authority to make decisions for the child outside the scope of the litigation, even if the guardian ad litem believes the decisions are in the general best interests of the child.

Father argues a guardian ad litem not selected by the parent will inevitably infringe on fundamental parental rights because many litigation decisions involve family choices that should be made by the parent, such as whether children are mature enough to testify, the scheduling of the children's legal

appointments, and the children's appropriate attire in the courtroom. However, to the extent such issues involve primarily child-rearing judgments, the guardian ad litem would not be entitled to act unilaterally and the parent would retain ultimate control over the decision. For example, a parent would generally retain the right to control the children's schedules and decide appropriate timing of legal appointments. Likewise, although the issue of the necessity for a child's testimony is, in part, a tactical decision to be made by the attorney, a parent would have the right to offer substantial input on the decision, such as on the maturity and competency levels of the children. A guardian ad litem does not replace the parental function, but merely oversees the attorney's work to ensure the child's legal interests are protected. If a parent believes the guardian ad litem oversteps his or her role or acts contrary to the child's legal interests, the parent may bring these issues to the trial court's attention. The court has the continuing authority to monitor and overrule any inappropriate judgments by the guardian ad litem.

We find unavailing Father's argument that in this case Maternal Grandmother will improperly use her role as a guardian ad litem to unconstitutionally interfere with his parental rights by taking control of the children's lives, including by making unannounced visits to his home and the children's schools. In her declaration, Maternal Grandmother denied she would engage in this conduct, and made clear that she would act only to protect her granddaughters' interests in the wrongful death litigation. The court, as the trier of fact, was entitled to find Maternal Grandmother's statements credible and conclude that Maternal Grandmother would not use her guardian ad litem status to improperly interfere with Father's relationship with his daughters.[9] Moreover, if Maternal Grandmother does attempt to act beyond her guardian ad litem role, Father has the right to bring this matter before the court.

In support of his argument that he has the fundamental right to select the guardian ad litem for his children, Father relies on a line of juvenile dependency cases. (See *In re C. G., supra,* 129 Cal.App.4th 27; *In re Daniel S., supra,* 115 Cal.App.4th 903; *In re Jessica G., supra,* 93 Cal.App.4th 1180.) Those decisions stand for the principle that a parent is entitled to notice and an opportunity to be heard before a court determines the *parent* is incompetent to make his or her own litigation decisions in a juvenile dependency case and thus appoints a guardian ad litem *for the parent.* (*In re C. G., supra,* at p. 32; *In re Daniel S., supra,* at p. 912; *In re Jessica G.,*

---

[9] Although the court did not make express findings on this issue, we are required to presume all findings to support the order. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) This presumption is inapplicable if the record supports a contrary interpretation. However, we find nothing in the record to show that the court failed to consider Father's arguments about the possibility Maternal Grandmother would engage in improper conduct in her guardian ad litem role. The declarations were before the court, and the record shows the court considered all evidence before it.

*supra*, at pp. 1186–1187.) The courts reason that the appointment of a guardian ad litem under such circumstances can substantially affect the parent's fundamental rights to raise his or her child because the very nature of the litigation involves the parent's right to continued custody and control over the child and could result in the complete termination of parental rights. (*Ibid.*)

These same concerns are not implicated here. In this case, Father has conceded that he has no right to control the children's litigation. Moreover, unlike a dependency proceeding, the result of the litigation will not affect his parental rights. Instead, the guardian ad litem determination merely concerns a decision as to who will represent the children in retaining and working with their attorney and assist the court in protecting the children's legal interests. For purposes of the fundamental right to parent, the appointment of a guardian for a child in a civil litigation is very different from the appointment of a guardian ad litem for a parent in a dependency proceeding.

We also find unhelpful Father's reliance on *Aronson v. Superior Court* (1987) 191 Cal.App.3d 294 [236 Cal.Rptr. 347]. In that case, a boy suffered injuries at birth caused by alleged medical malpractice. His aunt brought a complaint 14 years later. (*Id.* at p. 296.) The court held the complaint was untimely based on its conclusion that a statute of limitations was retroactive and barred the action as a matter of law. (*Id.* at pp. 297–299.) The court recognized the effect of its holding was "harsh" because a minor must rely on his parents to protect his interests. (*Id.* at p. 299.) But the court found the holding was "consistent with the minor's general legal situation which renders him dependent upon his parents' or legal guardian's judgment for his entire well-being in every respect. . . . Except in egregious situations calling for interference with legal custody, the parents, not the courts, make decisions for the minor. The decision to file a malpractice action is one such decision. . . . [¶] Nor is a court in any event well situated to judge the wisdom of the parental choice to sue or not to sue. We are not inclined to hold as a matter of law that a lawsuit is always the best use of family resources and energy. Nor are we inclined, or authorized, to take over the decisions relative to the care of minors." (*Id.* at pp. 299–300.)

Father argues that *Aronson* recognized that parents have the right to determine if and when their child should bring a civil lawsuit. We have no quarrel with this principle. But it is unhelpful here. In this case, Father has repeatedly made clear that he desires his children to bring a lawsuit to recover wrongful death damages and that he believes the lawsuit should be filed at this time. Once the parent has made the decision that his or her child should seek monetary recovery by filing a lawsuit, the policies supporting a parent's right to decide whether a child should become involved in civil

litigation are no longer paramount. Instead, the focus becomes the protection of the child's legal interests in the context of the civil action. Under such circumstances, a parent with a conflict of interest is not entitled to select the guardian ad litem or control the tactical or strategic legal decisions made by the guardian and/or the child's attorney.

## IV. *Court Did Not Err in Refusing to Strike Maternal Grandmother's Action*

Father next contends the court erred in denying his motion to strike the complaint filed by Maternal Grandmother and refusing to give priority to the lawsuit filed by Paternal Grandparents.

Generally, " '[w]here two [courts] have concurrent jurisdiction over the same parties and subject matter, the tribunal which first acquires jurisdiction of the parties is entitled to retain it exclusively.' (*Mungia v. Superior Court*[, *supra*], 225 Cal.App.2d [at p.] 283 [37 Cal.Rptr. 285].)" (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 926, fn. 3 [184 Cal.Rptr. 296, 647 P.2d 1075]; see also *Robinson v. Superior Court* (1962) 203 Cal.App.2d 263, 267 [21 Cal.Rptr. 475]; *Burch v. Slamin* (1955) 137 Cal.App.2d 1, 3 [289 P.2d 498].) Under this rule, the critical time for triggering jurisdiction is the service of the summons. (*Mungia, supra*, 225 Cal.App.2d at p. 283.)

Father argues this rule is inapplicable here because he—the custodial parent—supported Paternal Grandparents' lawsuit. However, as discussed above, Father had no statutory or constitutional right to control the children's litigation or the selection of the appropriate guardians ad litem under the circumstances of this case. Thus, the court was not required to abate Maternal Grandmother's lawsuit merely because Father preferred the identical lawsuit filed by Paternal Grandparents.

Father alternatively argues the first-to-serve rule is improper because it unfairly rewards those who "race to the courthouse." We agree that the rule should not be a rigid inflexible principle, particularly where as here, the multiple lawsuits were brought on behalf of minors, filed essentially simultaneously, and served within a brief period. Under these circumstances, there is no principled basis for requiring a court to favor one lawsuit over the other *solely* because of the timing of the lawsuits.

However, the court's denial of Father's motion to strike Maternal Grandmother's action was not based solely on the timing of the lawsuits. Although the court's written order cites only the first-in-time priority rule, the court's comments at the hearing show that the court's choice of Maternal

Grandmother's action was not based solely on the fact that she was the first to file and serve the lawsuit. At the hearing, the court explained that it was looking at the entire circumstances surrounding the case, including the fact that Father's conduct in dismissing the first lawsuit essentially triggered the race to the courthouse. Although Father argues that it was Paternal Grandparents, and not he, who filed the second lawsuit, the trial court had ample basis to infer that he (or his counsel) was the motivating force behind the second lawsuit filed in the East County Division of the superior court. Further, this second lawsuit was filed within hours after Father told Judge Quinn that he had dismissed the prior action because the family needed time to "heal" and grieve. On this record, the equities did not favor allowing Father or the Paternal Grandparents to obtain priority by the filing of a second action in a different division of the superior court.

Moreover, the court did not abuse its discretion to the extent it considered the fact that the Maternal Grandmother was the first to file as one relevant factor in the analysis. The applicable statutes permit any "relative or friend" to serve as a guardian ad litem. (Code Civ. Proc., § 373, subd. (a).) If several individuals wish to serve in that role, the court has the obligation to exercise its discretion to choose the guardian who would best protect the minor's litigation interests. If the court believes that the most equitable solution is to select the first in time, we cannot say that this constitutes an abuse of discretion.

Father argues that "if this Court permits the Respondent Court's decision to remain in force, it will only encourage mothers-in-law and distant relatives everywhere to impose themselves, unwelcome, into family affairs whenever there is a death in the family by rushing to the courthouse to file the first *ex parte* application for a guardianship appointment."

This argument is unpersuasive. Neither party has cited, nor have we found, a judicial decision presenting anything close to a situation where two sets of relatives are fighting over their desire to be appointed as guardians ad litem for a child. It is unlikely that a ruling upholding the court's discretionary decision to favor Maternal Grandmother's lawsuit will suddenly generate distant relatives running to the courthouse to represent minors. A guardian ad litem is generally uncompensated and has a limited role in the litigation. The guardian must retain counsel and is closely supervised by the trial judge. A parent, as here, has the right to object to the appointment if the parent believes the applicant would not protect the children's best interests in the litigation. Moreover, to the extent the issue of multiple lawsuits filed by different guardians ad litem becomes a problem, it is the Legislature, not the judiciary, that is the branch of government charged with balancing the various interests and remedying any perceived problems through the legislative process.

## V.  *Parental Notice of Guardian Ad Litem Application*

Many of Father's arguments challenging the court's rulings are predicated on his concern that a parent will not receive *notice* if a nonparent brings an action on behalf of his or her children and therefore the parent will be deprived of the opportunity to object to the lawsuit and/or to have control over the guardian ad litem decision. Although the statutes do not appear to specifically require notice, we would agree that to the extent practicable, courts should ensure a custodial parent has been notified when a nonparent applies to serve as a guardian ad litem for minors. Notice would permit a parent to seek his or her own appointment if there are no conflicts of interest and/or to object to the lawsuit itself. Moreover, because it is likely the parent will have relevant information on this issue, a parent should be given an opportunity at the earliest possible time to support the application and/or raise specific objections to the proposed guardian. If the parent cannot serve as guardian ad litem, but has concerns about the qualifications of the proposed guardian, the best time to raise these concerns would be at the outset of the litigation.

■  Notwithstanding these views, our role is limited to ruling on the factual matters before us, not hypothetical situations or theoretical constitutional issues. (See *People ex rel. San Francisco Bay Conservation etc. Com. v. Smith* (1994) 26 Cal.App.4th 113, 131 [1 Cal.Rptr.2d 488] [an appellant "is limited to a review confined to the facts of his own case"]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17, fn. 13 [50 Cal.Rptr.3d 585, 145 P.3d 462] ["As a prudential matter, [courts should] decline to address constitutional questions when it is unnecessary to reach them"].)

In this case, Father received notice and had the full opportunity to assert his objections to Maternal Grandmother's appointment. In the proceeding before Judge Quinn, Father was on notice that Maternal Grandmother was seeking to replace his preferred guardians ad litem, and a March 17 hearing was scheduled for the parties to present their views on the issue. However, *by his own actions,* he precluded that hearing because he unilaterally dismissed the action without informing Maternal Grandmother. After Judge Enright then appointed Maternal Grandmother as the guardian ad litem in her own action, Father was given full notice and an opportunity to raise his concerns about the appointment. Father's counsel filed extensive briefing and supporting declarations. The court held a lengthy hearing and permitted Father's counsel substantial opportunity to state each of his objections to the appointment.

Under these circumstances, Father had ample notice and an opportunity to object to the lawsuit and the Maternal Grandmother's appointment.

In reaching this conclusion, it is important to emphasize that the notice issue in this case was unnecessarily complicated by the tactics of both sets of attorneys. In each action, counsel filed an application asking a superior court judge to approve a guardian ad litem application without providing the court with any information about the prior litigation, the circumstances of the prior dismissal, or the existence of the dispute between Father and Maternal Grandmother. Maternal Grandmother's counsel did not inform Judge Enright that Father was strongly objecting to Maternal Grandmother's appointment, or that two hours earlier Judge Quinn had denied Maternal Grandmother's guardian ad litem petition on procedural grounds. Father likewise did not notify Judge Sturgeon that Father had dismissed his prior action when a motion had already been pending on the guardian ad litem issue, or that Maternal Grandmother was seeking to be appointed. By failing to provide this information to the court, the parties created a situation where neither court could initially rule on the petitions in a fully informed manner.

As officers of the court, counsel have the obligation to provide relevant information to the court when submitting their guardian ad litem applications. Relevant information in this case included the fact that there was a prior dispute before another superior court judge on the identical guardian ad litem issue and that each applicant had actual knowledge that an interested party was objecting to the application. In breaching this duty, counsel set the stage for unnecessary litigation that merely intensified the dispute between the parties, delayed the proceedings, added to the attorneys fee bills, took the focus off the claims against the true alleged wrongdoers, and reduced the daughters' potential recovery. If either court had been notified of the true circumstances surrounding the guardian ad litem petitions, we are confident the court would have immediately set a hearing with all interested participants, and eliminated much of the confusion created by the multiple lawsuit scenario.

Attorneys have the duty to be forthright and honest with the court, and to be honest with each other. Although counsel owes a duty to his or her client, counsel owes an equally compelling obligation to conduct himself or herself in a manner that allows the court to determine a cause in a fair, equitable, and open manner. (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330 [53 Cal.Rptr.2d 832].) This is particularly important where, as here, the court is entrusted with the responsibility of protecting a minor's best interest.

## DISPOSITION

Father's petition for writ of mandate is denied. The stay issued by this court on October 17, 2006, is vacated. The parties to bear their own costs.

McDonald, J., and O'Rourke, J., concurred.