Filed 6/13/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALEX R., | B270686 |
| Petitioner, | (Los Angeles County Super. Ct. No. BF053523) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| MIRIAN R., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate.  Maren E. Nelson, Judge.  Petition granted.

Latham & Watkins, Michael G. Romey, Terence L. Finley, Shawn P. Hansen, Thomas E. Golding; Los Angeles Center for Law and Justice and Sarah Reisman for Petitioner.

Frederick R. Bennett for Respondent.

No appearance for Real Party in Interest.

————————————————

Petitioner Alex R. is a 12-year-old child from Honduras who entered the United States without documentation in 2014. Alex R. settled in Los Angeles, where he now lives with his mother. Alex R. has never lived with the man he identifies as his presumptive father, Alex B.[1]

Alex R. hopes to obtain "special immigrant juvenile" (SIJ) status—a classification created by Congress to provide special immigration protection to undocumented, unaccompanied children entering the United States who have been the victims of parental abuse, neglect, abandonment, or a similar circumstance. (8 U.S.C. § 1101(a)(27)(J).) When applying for SIJ status, a child must attach an order from a state court containing three specific factual findings: (1) the child is in the custody of a court-appointed agency, guardian or other individual; (2) the child cannot reunify with one or both parents due to abuse, neglect, abandonment or other similar basis under state law; and (3) it is not in the child's best interest to return to his or her home country or his or her parents' home country. (*Id.*; 8 C.F.R. § 204.11(d)(2) (July 6, 2009).) In California, any superior court called upon to adjudicate issues of child custody or welfare has jurisdiction to make the findings necessary to allow a child to apply for SIJ status. (Code Civ. Proc., § 155, subd. (a).)

Alex R. began the process of obtaining the findings necessary for an SIJ application by filing a parentage action in the family court. As required by Family Code section 7635, subdivision (a), he requested that the court appoint a guardian ad litem to protect his interests in the litigation. The court refused to appoint a guardian ad litem for Alex R. unless he gave his father notice of the application for a guardian ad litem. We conclude that the court erred in requiring parental notice before appointing a guardian ad litem.

---

[1] For clarity in this proceeding, and without making any legal or factual determinations concerning the relationship between Alex R. and Alex B., we will refer to Alex B. as Alex R.'s father.

## FACTUAL AND PROCEDURAL BACKGROUND

According to documents filed by Alex R. in the family court, Alex R. was born in 2003 in Honduras and lived there with his maternal grandmother until 2014. In April 2014, he moved to Los Angeles, where he lives with his mother, Mirian R. In June 2015, Alex R. filed a petition to establish his parental relationship with Mirian R. In supporting documentation, Alex R. listed Alex B. as his "presumptive father" and indicated that he has never lived with him.

Alex R. filed an application and order for the appointment of a guardian ad litem. In the Central Judicial District of Los Angeles County, the supervising judge has established a practice that except in exigent circumstances, applications for guardians ad litem are scheduled for noticed hearings in the courtroom of the supervising judge. Parties requesting the appointment of a guardian ad litem receive a minute order requiring them to provide notice of the hearing to "all necessary parties." Attorneys who practice in this court have testified by declaration that the supervising judge requires service in conformity with the Code of Civil Procedure of notice to both of the minor's parents, and additionally, that the attorney representing the child provide a proof of service form describing how notice was effectuated or a declaration of due diligence detailing the attorney's efforts if he or she was unable to provide the required notice. Counsel for the superior court acknowledges that it is the court's practice to inquire whether notice of the guardian ad litem application was given to the absent parent and, "in many instances, to require that the petitioner either give notice to the absent parent of the [guardian ad litem] application or provide a declaration or other evidence as to why notice could not be given."

Consistent with this policy, the court set a hearing for July 28, 2015, and ordered Alex R.'s attorney to give notice to "all necessary parties." No guardian ad litem was appointed at the July 28 hearing. Alex R. filed a second application and order for the appointment of a guardian ad litem on November 9, 2015, and a hearing was set for January 7, 2016.

3

On January 7, 2016, the court refused to appoint a guardian ad litem for Alex R. because his noncustodial father had not been served with notice of the guardian ad litem request. Alex R.'s counsel argued that there was neither any obligation nor any procedure under California law for Alex R. to give notice to his noncustodial father of the application for the appointment of the guardian ad litem. The court responded, "I don't think that's what the statute says."

The court told counsel that the issue was one of "fundamental due process." Alex R. agreed, and argued that the due process right that was at stake at the guardian ad litem appointment stage was the right of the petitioning child to have a guardian ad litem appointed so that the child's rights would be protected and the requested litigation could commence. The father would receive notice once the summons was issued.

Alex R. advised the court that the leading case concerning guardian ad litem appointments, *Williams v. Superior Court* (2007) 147 Cal.App.4th 36 (*Williams*), created no notice requirement as to a minor's parents, and that the *Williams* court specifically recognized that the statute providing for the appointment of guardians ad litem had a "no notice" provision. The court stated that it disagreed with Alex R.'s interpretation of the *Williams* decision. The court believed that because Alex R. sought a determination in the underlying action that his noncustodial father abandoned, neglected, or abused him, and that his mother should be granted sole legal and physical custody, Alex R. could not under *Williams* be appointed a guardian ad litem in order to proceed with the litigation without notice being given to the noncustodial parent of the guardian ad litem application.

The court continued the hearing until the following month to permit Alex R. to give the notice it required. Alex R. advised the court of his intention to seek appellate review of the court's decision by petition for writ of mandate. The court welcomed counsel to do so, describing cases such as Alex R.'s as "procedurally difficult," and stating, "The more guidance we can get from the [Court of Appeal] about how these cases should be handled, the better, from this court's perspective. I think notice should be given, but reasonable minds could differ about that, and if the [Court of Appeal] thinks

4

we can appoint a guardian ad litem in a case like this without any notice to the other parent, that's fine. Let's figure it out."

Although the court refused to grant Alex R.'s application for a guardian ad litem, the court did take testimony from Alex R. so that he would not have to miss school for further proceedings on the application. The court inquired of Alex R. whether he knew his aunt, the proposed guardian ad litem; whether he had any difficulty communicating with her; whether he felt comfortable that he could talk to her about any difficulties he had with his mother or other issues; and whether he "was okay with his aunt helping" him in his case. Alex R. advised the court that the guardian ad litem was his mother's sister, that he felt that he could talk to his aunt, and that he wanted his aunt to help him in his action.

Alex R. petitioned this court for a writ of mandate ordering the family court to vacate its January 7, 2016 order and to enter a new order granting his application for the appointment of a guardian ad litem, as well as an order that no parental notice would be required in future applications for guardians ad litem. We issued an order to show cause why the court should not be compelled to vacate its January 7, 2016 order and to issue a new order appointing a guardian ad litem.

## DISCUSSION

I.      Guardians ad Litem

Under California law, as a general rule, a "minor who is a party in a lawsuit must appear '"by a guardian ad litem appointed by the court in which the action or proceeding is pending. . . ." (Code Civ. Proc., § 372, subd. (a).)' [Citations.]" (*Williams*, *supra*, 147 Cal.App.4th at p. 46.) In actions such as this one under the Uniform Parentage Act, Family Code section 7600 et seq., the Family Code also mandates that minor children be represented by a guardian ad litem: "If the child is a minor and a party to the action, the child shall be represented by a guardian ad litem appointed by the court." (Fam. Code, § 7635, subd. (a).)

5

"The purpose of a guardian ad litem is to protect the minor's interests in the litigation" (*Williams*, *supra*, 147 Cal.App.4th at p. 47), and his or her role is limited in scope. "A guardian ad litem is not a party to the action, but is the party's representative and is an officer of the court. [Citations.] The guardian ad litem """""is like an agent with limited powers."""""" [Citation.] ""[A] guardian ad litem's role is more than an attorney's but less than a party's."""""" (*Ibid*.) "A guardian ad litem's role is limited to protecting the child's interests in the litigation, and the role is closely supervised by the judge." (*Id*. at p. 50, italics omitted.)

Procedurally, if, as here, the petitioning minor is under 14 years old, "'the appointment must be made before the summons is issued, upon the application of . . . a relative or friend of the minor.' (Code Civ. Proc., § 373, subd. (a)[].)" (*Williams*, *supra*, 147 Cal.App.4th at pp. 46-47, italics omitted.) As the Code of Civil Procedure requires that a guardian ad litem be appointed before the summons may be issued, the court's refusal to appoint a guardian ad litem prevents him from obtaining a summons and commencing his parentage action.[2]

II.     The Court Erred When It Required Service of the Application for the Appointment of Guardian ad Litem upon Alex R.'s Father

The court refused to appoint a guardian ad litem for Alex R. on the ground that notice to his noncustodial father was required by statute, by the decision in *Williams*, and to protect the father's due process rights.

A. Neither a Statutory Requirement nor Procedure Exists for Providing Notice to Parents of the Application for a Guardian ad Litem

Neither the Code of Civil Procedure nor the Family Code requires that Alex R. serve his father with the request for the application for the appointment of a guardian ad

---

[2]     Respondent is under the mistaken impression that a summons was issued in this action in June 2015. No summons has been issued, nor can one be issued, until the court appoints a guardian ad litem for Alex R. (Fam. Code, § 7635, subd. (a); Code Civ. Proc., §§ 372, subd. (a); 373, subd. (a).)

litem before a guardian ad litem may be appointed, and none of the existing statutes provides a mechanism for the service requirement imposed by the court.

The Code of Civil Procedure and the Family Code contain no express requirement of notice to a parent before a guardian ad litem is appointed. (Code Civ. Proc., §§ 372, 373; Fam. Code, § 7635; *Williams*, *supra*, 147 Cal.App.4th at p. 48 ["there is no specific statutory requirement that a parent be notified if a nonparent applies to serve as the guardian ad litem"].) It is a "'cardinal rule of statutory construction'" (*People v. Guzman* (2005) 35 Cal.4th 577, 587) that court must not "insert what has been omitted" from a statute. (Code Civ. Proc., § 1858.)

In fact, the guardian ad litem laws suggest that the Legislature acted with a specific intent not to require notice of a guardian ad litem application in most circumstances. The guardian ad litem statute in the Code of Civil Procedure requires parental notice in only one specific instance, not applicable here: when a minor who is living with a parent or guardian appears in court without counsel and seeking one of a set of identified restraining orders or protective orders. In that instance, notice of the appointment of a guardian ad litem must be sent to at least one parent or guardian of the minor unless the court determines that notice would not be in the child's best interest. (Code Civ. Proc., § 372, subd. (b)(2).) "It is a settled principle of statutory interpretation that if a statute contains a provision regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent." (*People v. Arriaga* (2014) 58 Cal.4th 950, 960; see also *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1118.) Accordingly, the Legislature's express requirement of notice in one specific instance of a guardian ad litem appointment, juxtaposed with its omission of such a requirement with respect to all other guardian ad litem appointments, indicates the Legislature's intent not to require service where it did not do so expressly. (See *Arriaga*, at p. 960 [where certificate of probable cause was required before bringing an appeal under one subdivision of a statute but not mentioned in another, the omission indicated the Legislature's intent not to require the certificate in the latter instance].)

Code of Civil Procedure section 372, subdivision (b)(2) is instructive in other regards as well. First, it demonstrates that when the Legislature chooses to require notice in the guardian ad litem context, the statute is explicit and includes instructions for how that notice is to be provided. Second, notice, when required, is given after the guardian ad litem is appointed, not before the application for a guardian ad litem is heard. Third, even when notice is required, it need not be provided to both parents. Finally, whether notice is given under this provision depends on whether giving notice is in the child's best interests, demonstrating that the child's interests are paramount in this context.

Not only is there no requirement in the law for service of the guardian ad litem application, the statutes concerning service and notice of actions under the Uniform Parentage Act provide no mechanism for serving the additional pre-summons notice that the court here required. The Family Code requires that all parents, including presumptive parents, be notified of a parentage action in accordance with the provisions of the Code of Civil Procedure. (Fam. Code, §§ 7635, subd. (b), 7666.) The Code of Civil Procedure requires notice of an action to be effectuated by delivering a "copy of the summons and of the complaint to the person to be served." (Code Civ. Proc., § 415.10.) Alex R. has not been issued a summons, and, consistent with the Code of Civil Procedure, he cannot be issued a summons until his guardian ad litem is appointed. (Code Civ. Proc., § 373, subd. (a).) Without a summons, Alex R. cannot comply with the Code of Civil Procedure's notice requirements. (Code Civ. Proc., § 415.10; see also Fam. Code, §§ 7635, subd. (b), 7666.)

Alex R. is left in a Catch-22 by the court's ruling: because he does not have a guardian ad litem he cannot obtain the summons that would allow him to provide the statutorily-required notice of the action to his father, but he cannot secure a guardian ad litem until he serves his father with the notice of the action. (Fam. Code, § 7635; Code Civ. Proc., §§ 415.10, 373.)

8

### B. Decisional Law Does Not Require Parental Notice Prior to Appointment of a Guardian ad Litem

The court erred when it concluded that the decision in *Williams*, *supra*, 147 Cal.App.4th 36, required Alex R. to give notice of his application for the appointment of a guardian ad litem before the application could be granted.

*Williams* involved a custodial father's challenge to the trial court's appointment of his children's maternal grandmother as their guardian ad litem in a wrongful death action. (*Williams*, *supra*, 147 Cal.App.4th at p. 39.) The father in *Williams* did not contend that the appointment of the grandmother violated the guardian ad litem statutory requirements. Indeed, as the *Williams* court noted, "the statutes contemplate that the [guardian ad litem] appointment will be based on an ex parte application" because "generally no party has been served until the appointment is made." (*Id*. at pp. 47-48.) Moreover, the court noted, "there is no statutory requirement that a parent be notified if a nonparent applies to serve as the guardian ad litem." (*Id*. at p. 48.)

The custodial father in *Williams* argued that he had a constitutional due process right to determine who would represent his children as guardian ad litem even though he had a potential conflict of interest with his children in their wrongful death litigation. (*Williams*, *supra*, 147 Cal.App.4th at pp. 48-49.) The court concluded that in light of the father's desire that the children pursue the litigation, the focus of the guardian ad litem appointment was to protect the children's legal interests in the context of the action; and that a parent with a conflict of interest was not entitled to select the guardian ad litem or control the tactical or strategic legal decisions made by the guardian ad litem. (*Id*. at pp. 52-53.)

The custodial father in *Williams*, *supra*, 147 Cal.App.4th at page 55, also premised his challenges to the appointment of the guardian ad litem for his children on a concern that a parent would not receive notice if a nonparent brought an action on behalf of the children, and therefore the parent could not object to the lawsuit or have control over the guardian ad litem decision. While the court declined to rule on the custodial father's hypothetical arguments because he did have notice of the guardian ad litem application

9

and of the civil litigation filed on behalf of the children, the court commented in dicta, "Although the statutes do not appear to specifically require notice, we would agree that to the extent practicable, courts should ensure a custodial parent has been notified when a nonparent applies to serve as a guardian ad litem for minors." (*Ibid.*)

*Williams*, *supra*, 147 Cal.App.4th 36 cannot be read to support the court's conclusion here that notice of the guardian ad litem application must be provided to a noncustodial parent before an appointment may be made. *Williams* did not establish a requirement that notice of the guardian ad litem application be given to any parent: To the contrary, the *Williams* court expressly noted that there was no legal requirement that parents be provided notice of an application for the appointment of a guardian ad litem. (*Id*. at p. 48.) Even the *Williams* court's discussion in dicta concerning the best practices for notice (*id*. at p. 55) pertained only to custodial parents, not noncustodial parents. *Williams* did not suggest, let alone require, that notice be given to a noncustodial parent prior to the appointment of a guardian ad litem. *Williams*, therefore, has no application to the facts of this case and offers no support for the court's imposition of a notice requirement not found in the Code of Civil Procedure or the Family Code.

Counsel for the superior court also defends the court's additional service requirement policy by relying on the decision in *Bianka M. v. Superior Court* (2016) 245 Cal.App.4th 406, review granted May 25, 2016, S233757. Now under review by the California Supreme Court, *Bianka M.* concerns the question of whether a court may, in a parentage action involving a child and one parent, require that the second parent be joined as a party to the litigation before awarding physical and legal custody to the first parent upon allegations that the second parent abused and abandoned the child. *Bianka M.* did not address issues pertaining to the appointment of guardians ad litem, and it is factually dissimilar to this case. The court here did not deny Alex R.'s request for custody orders and parentage findings on the ground that he had not joined his father in the litigation. Instead, the court refused Alex R. the guardian ad litem he needed in order to commence his parentage action despite his express acknowledgement that his father

10

would by law be entitled to notice of the action and would be served with the summons once the guardian ad litem was appointed and the summons was issued.

### C. Due Process Does Not Require Notice to Parents Before a Guardian ad Litem May Be Appointed

The due process rights of Alex R.'s father are not implicated by Alex R.'s application for appointment of a guardian ad litem. Guardians ad litem exist to protect minors' rights and interests in litigation under the close supervision of the court. (*Williams*, *supra*, 147 Cal.App.4th at pp. 47, 50.) The appointment of a guardian ad litem for a child does not "affect [a parent's] parental rights. Instead, the guardian ad litem determination merely concerns a decision as to who will represent the children in retaining and working with their attorney and assist the court in protecting the children's legal interests." (*Id.* at p. 52.) Alex R.'s father is not disadvantaged in any way by a lack of notice of the appointment of a guardian ad litem for Alex R.—the appointment merely allows Alex R. to assert his rights and appear in court. The "central issue" in appointing a guardian ad litem is not the interests or rights of a parent but "the appropriate protection of the minor's legal right to recover damages or other requested relief." (*Id.* at p. 47.) Accordingly, the appointment of a guardian ad litem is a routine procedure, often ex parte, that is "usually made on application only and involves little exercise of discretion." (*In re Marriage of Caballero* (1994) 27 Cal.App.4th 1139, 1149.)

While the appointment of a guardian ad litem does not impact the due process rights of Alex R.'s father, the underlying action, as the court recognized, does impact his rights. The court expressed concern that Alex R.'s father receive notice of the application for a guardian ad litem because in the parentage action Alex R. seeks findings that his noncustodial father abandoned, neglected, or abused him and that his mother should be granted sole legal and physical custody, findings that will allow him to seek SIJ status. Protections already exist in California law, however, to safeguard the rights of a parent in this type of litigation: Once the parentage action commences and the summons issues, Alex R.'s father will be entitled to service of the summons and notice of the action.

11

(Fam. Code, §§ 7635, subd. (b), 7666, subd. (a); Code Civ. Proc., §§ 415.10, 373.) Alex R.'s parentage petition cannot be heard until Alex R. serves his father with the summons and the petition in this action by means of the procedures prescribed by the Code of Civil Procedure and also provides proof to the court that he has given the required notice to his father. (Fam. Code, §§ 7635, subd. (b), 7666, subd. (a).) Family Code section 7635, subdivision (b), moreover, requires that parents receive the opportunity to be heard on the petition. The findings Alex R. seeks, therefore, cannot be made without his father being afforded both notice of the action and the opportunity to oppose it if he so desires.

The notice procedures set forth by existing statutes that provide for the father to receive notice after the guardian ad litem is appointed and the summons issued are sufficient to protect the noncustodial father's rights in this action. No further notice is required by California statutory or decisional law, and no further notice requirement need be imposed judicially in order to safeguard the rights of Alex R.'s father. A policy or practice requiring that noncustodial parents must be served twice—once before the guardian ad litem is appointed and once again when the summons has issued—imposes unauthorized, unnecessary, and burdensome obstacles on children seeking access to the courts. The court erred when it required notice be given to Alex R.'s father of the application for appointment of the guardian ad litem.

While declining to appoint Alex R.'s aunt as his guardian ad litem at the January 7, 2016 hearing, the court anticipated further proceedings concerning the requested appointment and continued the hearing so that the notice it required could be given. So that Alex R. would not need to miss school to be personally present for the subsequent hearing, the court took Alex R.'s testimony about his relationship with the proposed guardian ad litem, whether he felt comfortable with her, and whether he wanted her to be appointed as his guardian ad litem. Because the court made a full record that Alex R.'s aunt was an appropriate guardian ad litem, we order that the court appoint her as Alex R.'s guardian ad litem so that he may pursue his parentage action without further delay.

12

**DISPOSITION**

The petition is granted.  Let a peremptory writ of mandate issue directing respondent Los Angeles Superior Court to vacate its order of January 7, 2016 continuing the hearing on petitioner's application for a guardian ad litem, and to enter a new and different order appointing Alex R.'s maternal aunt as guardian ad litem.

No costs are awarded.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.

13