Filed 5/18/22; Certified for Publication 6/9/22 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| A.F., a Minor, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JEFFREY F.,<br><br>    Defendant and Respondent. | D079373<br><br><br>(Super. Ct. No. 21FDV01528N) |

APPEAL from a judgment of the Superior Court of San Diego County, Victor M. Torres, Judge.  Reversed.

Beatrice L. Snider and John L. Romaker, for Plaintiff and Appellant.

Niddrie Addams Fuller Singh, Victoria E. Fuller; DeVito & Nore and Nicole M. Nore, for Defendant and Respondent.

Eleven-year-old A.F. sought a domestic violence restraining order (DVRO) against her father, Jeffrey F. (Father), who holds joint legal custody with her mother, Andrea F. (Mother).  The petition was filed by Mother on A.F.'s behalf.  Mother sought appointment as A.F.'s guardian ad litem (GAL) in the domestic violence (DV) matter at the same time.  The court granted the request for GAL appointment the same day.  A.F. was represented by

attorney Edward Castro in the domestic violence matter. Castro previously represented Mother in her marital dissolution from Father.

Father objected to Mother's appointment as GAL and to Castro's representation of A.F., contending Castro had a conflict of interest under Rule 1.7(a), (b) of the State Bar Rules of Professional Conduct, (Rule 1.7). The court removed Mother as GAL and granted Father's request to disqualify Castro.

A.F. appeals, contending (1) Father lacks standing to challenge Castro's representation of A.F.; (2) the court incorrectly concluded Castro simultaneously represents Mother and A.F. and consequently abused its discretion by applying Rule 1.7 to disqualify Castro; and (3) the court should have considered the rules governing successive representation and denied the request for disqualification.

We assume Father has standing to challenge Castro's representation of his minor child A.F. However, we conclude the record lacks substantial evidence to support the court's finding that Castro simultaneously represented Mother and A.F., and it was therefore an abuse of discretion to apply Rule 1.7 to disqualify Castro. We decline to draw any conclusion regarding the propriety of disqualifying Castro under the rules and standards governing successive representation because it would require a fact-intensive evaluation not sufficiently developed in the record before us. Accordingly, we

2

will reverse the order disqualifying Castro as attorney in the related matters before the court and remand the matter for proceedings consistent with this opinion.[1]

## I

## BACKGROUND AND PROCEDURAL FACTS

In 2013, when A.F. was four years old, Mother sought and received a DVRO and a criminal protective order against Father.[2] Then, Mother and Father dissolved their marriage in 2015. As part of the dissolution, they reached a marital settlement agreement that included child custody, and the court retained jurisdiction over the matter for purposes of resolving disputes.

The custody agreement gives parents joint legal care, custody, and control of A.F. It also states, "The child shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order."

Mother was represented by Edward Castro in the dissolution proceedings; Castro filed a notice of withdrawal of attorney of record on November 17, 2015.

---

[1] We grant Father's unopposed request for judicial notice of court records demonstrating Castro substituted out as A.F.'s attorney of record following his disqualification, then substituted back in as A.F.'s attorney of record following our grant of supersedeas relief staying enforcement of the disqualification order pending resolution of this appeal. (See Evid. Code, § 452, subd. (d).)

[2] The protective orders ran concurrently and expired in 2016.

In October 2019, Mother sent an email to Father in which she referenced getting advice from her attorney, and she offered to have "Ed" set a court date if the parties could not resolve their issue.[3]

On April 2, 2021, Castro filed a DVRO petition on behalf of Mother as GAL for A.F. against Father. The petition included a request for a child custody and visitation order on behalf of Mother as the GAL, granting Mother full legal and physical custody, with no visitation for Father.[4] Castro simultaneously sought approval of Mother as the GAL, which the court granted the same day.

The petition included a declaration by Mother that detailed recent events between A.F. and Father told from Mother's perspective. It also included information about Mother's past DVRO against Father, as well as allegations that she believed Father had a problem with pornography based on her experiences with him during the time they were married.

Because of the custody request in the petition, the court initially consolidated the civil DVRO action and the family law dissolution matter in April 2021. It also set trial on the DVRO request. Father's attorney notified the court that Father intended to seek removal of Mother as the GAL and request disqualification of Castro.

---

[3]     The court sustained A.F.'s objection to Father's statement in his declaration that Mother may have continued to consult with Castro as her attorney based on inferences he drew from this email. The court admitted the email itself.

[4]     The court told the parties that it was not appropriate for a child, in a DVRO request, to seek modification of custody orders granted in a dissolution under Family Code section 6323. It also explained that the remaining requests raised by Father were not appropriate for the domestic violence case without a finding of domestic violence one way or the other.

Father filed a request for order seeking removal of Mother as the GAL, disqualification of Castro as A.F.'s attorney in the DVRO matter and as Mother's attorney in the family law matter, appointment of counsel for A.F., reunification therapy, and appointment of an individual therapist for A.F. Father's memorandum of points and authorities cited Rule 1.7, which prohibits representation of a client absent informed written consent from each client when the representation is directly adverse to another client (Rule 1.7(a)) and provides that a lawyer shall not represent a client absent informed written consent from each affected client when there is a significant risk the responsibility to or relationship with a third party would materially limit the representation (Rule 1.7(b)).

In May 2021, the court unconsolidated the two matters, but the cases remain related.

During the June 2021 hearing, Father's counsel argued that Mother could have taken other action within family court, and that Mother was not a disinterested and unbiased individual who could distinguish between her feelings toward Father and what was in the best interest of A.F.

The court granted the motion to replace Mother as the GAL. It explained: "I find that mother and her alignment so closely with the minor child and her past conduct of aligning against father . . . warrants the mother being the inappropriate party to be the guardian ad litem."

The court told the parties that it did not have competent evidence in front of it that Castro had engaged in any substantial conduct that disqualified him. Although the court did not believe it was appropriate for Castro to represent A.F., it noted that it did not see authority suggesting as much.

Father's counsel argued during the hearing that Castro could not "divorce himself . . . from the prior representation" of Mother and argued Father did not know "what information [Castro] obtained from a minor child, which now [Castro]'s going to use in his representation of [Mother]."  The court told the parties that "as far as removing or disqualifying Mr. Castro in the dissolution matter," that issue was not before the court at that time.  It reserved on the issue of disqualification and took the matter under submission.

The court issued its written statement of decision in July 2021.  The order granted Father's motion to disqualify Castro.[5]  The court applied Rule 1.7, addressing conflicts of interest among current clients (Rules Prof. Conduct, former rule 3-310), and it concluded that Mother's act of signing a conflict of interest waiver suggested that Castro separately represented Mother and A.F.  Additionally, the court noted that the petition for the DVRO requested custody orders, which could only be brought by Mother herself under Family Code[6] section 6323, not by A.F. or Mother as the GAL.

The court ultimately concluded that Rule 1.7 applied and found that Mother as the GAL could not provide consent to waive a conflict between Castro's representation of A.F. and Castro's representation of Mother.  And it concluded that any waiver signed on A.F.'s behalf by Mother was not valid because the court had not yet granted permission for Mother to serve as the

---

[5]     The order was issued in case No. 21FDV01528N (the DV matter), but it also disqualified Castro in case No. DN171362 (the dissolution matter).

[6]     Statutory references are to the Family Code unless otherwise specified.

6

GAL at the time the waivers were signed.[7] Thus, while the conflict waiver was valid as to Mother, who had authority to sign it on her own behalf, the representation did not comply with Rule 1.7, which requires informed written consent by each client. The court also invited the parties to appear ex parte to set a hearing to resolve the issue of who would serve as A.F.'s GAL in the DV matter.

A.F. timely appealed the disqualification of Castro.

## II

## DISCUSSION

### A. Standing

A moving party "must have standing, that is, an invasion of a legally cognizable interest, to disqualify an attorney." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1357 (*Great Lakes*).) Standing is a question of law, which we may determine independently of the trial court's ruling. (*Id.* at p. 1354.) Although the complaining party generally "must have or must have had an attorney-client relationship with the attorney" he seeks to disqualify (*id.* at p. 1356), "no California case has held that only a client or former client may bring a disqualification motion" (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1204). Further, while "imposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic" (*Great Lakes*, at p. 1358), a paramount concern is "to preserve public trust in the

---

[7] The court also noted that at the time the conflict of interest waiver was signed, Mother and Father shared legal custody of A.F.

scrupulous administration of justice and the integrity of the bar" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*)).

Father contends he has standing because he has a personal stake in protecting A.F.'s best interests, and he believes a conflict of interest between A.F.'s and Mother does not serve A.F.'s best interests. Father holds joint legal custody with Mother, and a parent's interest in the companionship, care, custody, and management of his or her child is a fundamental civil right. (*In re B.G.* (1974) 11 Cal.3d 679, 688; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 223.) Thus, if Father believes Castro's concurrent representation of A.F. and Mother is not in A.F.'s best interests, and Mother acting as the GAL is the party who waived any potential conflict, this may give Father standing. Further, as Father notes, even if he does not have standing as the joint legal custodian, the court has authority to disqualify counsel under Code of Civil Procedure section 128, subdivision (a)(5).[8] (See *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.) The court here recognized Mother's alignment with A.F. in the civil DVRO matter is consistent with her past conduct and views in the marital matter, even though the final agreement granted joint legal care, custody, and control to the parents.

At least arguably, a legally cognizable interest for disqualifying an opposing attorney may arise from generalized policy concerns surrounding the rule, e.g., the integrity of the process. (*Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482-483 [addressing an attorney-witness situation].) In this

---

[8]  Code of Civil Procedure section 128, subdivision (a)(5) provides that every court has the power to control the conduct of its ministerial officer and all other person connected with a judicial proceeding before it in all matters.

factual scenario, the court can assume without deciding that Father may assert standing to object to opposing counsel's representation of his minor child.

## B. Guardian Ad Litem

### 1. *Role of GAL*

Code of Civil Procedure section 372, subdivision (a) requires a minor who is a party to appear by a guardian ad litem. (See also *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 223.) There is no statutory requirement to provide notice to a parent before a GAL is appointed. (Code Civ. Proc., §§ 372, 373; Fam. Code, § 7635; *Alex R. v. Superior Court* (2016) 248 Cal.App.4th 1, 7-8; *Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 48 (*Williams*).) When a minor is living with a parent without counsel and seeks a protective order, notice of appointment of a guardian ad litem must be sent to at least one parent unless the court determines the notice would not be in the child's best interest. (Code Civ. Proc., § 372, subd. (b)(2); *Alex R.*, at p. 8.) When there is no conflict of interest, the appointment is usually made upon application. (*In re Marriage of Caballero* (1994) 27 Cal.App.4th 1139, 1149.)

"[A] guardian ad litem represents the interests of a person in legal proceedings who lacks capacity to represent himself or herself in those proceedings." (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 965.) "In the adversarial context, the guardian ad litem's function is to protect the rights of the [minor], control the litigation, compromise or settle the action, control procedural steps incident to the conduct of the litigation, and make stipulations or concessions in the [minor] person's interests. [Citation.] In such cases, the guardian ad litem's role is 'more than an attorney's but less than a party's.' [Citation.]" (*In re Charles T.* (2002) 102 Cal.App.4th 869, 875-876.) The GAL is responsible for assisting the attorney in protecting the

9

rights of the minor. (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453.) But the attorney does not represent the GAL, who is not a party to the action (*J.W.*, at p. 964 [GAL is not party to an action]; see *Shen v Miller* (2012) 212 Cal.App.4th 48, 61-62); thus, the attorney represents the minor.

"[W]hen considering the appropriate guardian ad litem for a minor plaintiff in a civil lawsuit, the central issue is the appropriate protection of the minor's legal right to recover damages or other requested relief." (*Williams*, *supra*, 147 Cal.App.4th at p. 47.) Further, " '[w]hen there is a potential conflict between a perceived parental responsibility and an obligation to assist the court in achieving a just and speedy determination of the action,' a court has the right to select a guardian ad litem who is not a parent if that guardian would best protect the child's interests." (*Id.* at p. 49.) The "court is, in effect, the guardian of the minor and the guardian *ad litem* is but an officer and representative of the court." (*Serway v. Galentine* (1946) 75 Cal.App.2d 86, 89.)

### 2. *Mother's Role as GAL*

When A.F. filed for a DVRO against Father, she filed a request for appointment of Mother as her GAL. The court granted this request the same day. Later the court removed Mother as the GAL. However, its analysis regarding the conflict of interest from Castro's representation was based on Mother's role as the GAL and not her status as a party in the related dissolution matter. Mother's removal as the GAL changes her role in the DV matter and thus affects the propriety of Castro's disqualification, as we explain.

10

## C. The Request for Attorney Castro's Disqualification

### 1. *Standard of Review*

We review an attorney's disqualification for an abuse of discretion (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561 (*Zimmerman*); *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705 (*Jessen*)) and "accept[ ] as correct all of [the court's] express or implied findings supported by substantial evidence." (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322 (*City National Bank*).) We presume the trial court's order is correct, and we indulge all presumptions to support the order, resolving conflicts in favor of the prevailing party and the trial court's resolution of any factual disputes. (*Zimmerman*, at pp. 561-562.) "In exercising discretion, the trial court is required to make a reasoned judgment which complies with applicable legal principles and policies." (*Id.* at p. 561.) Further, "if substantial evidence supports the trial court's express or implied findings of fact, we review the resulting legal conclusions for an abuse of discretion." (*Ibid.*) Thus, we are bound by the substantial evidence rule as well. (*Ibid.*) "We will reverse the trial court's ruling only where there is no reasonable basis for its action." (*City National Bank*, at p. 323.)

### 2. *Types of Conflict of Interest*

Typically, disqualification motions arise in two factual circumstances: "(1) in cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client of the attorney; and (2) in cases of simultaneous representation, where an attorney seeks to represent in a single action multiple parties with potentially adverse interests." (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) "In simultaneous representation cases, '[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate

11

expectation—of *loyalty*, rather than confidentiality.' " (*Id.* at p. 160*., quoting *Flatt v. Superior* Court (1994) 9 Cal.4th 275, 284 (*Flatt*).) In successive representation cases, the concern is an attorney's duty of confidentiality. (*Western Sugar Coop v. Archer-Daniels-Midland Co.* (C.D. Cal. 2015) 98 F.Supp.3d 1074, 1080 (*Western Sugar Coop*) [applying the California State Bar Act and the California Rules of Professional Conduct].) In successive representation cases, courts apply the substantial relationship test, but in simultaneous representation cases, the rule is per se or automatic disqualification in all but a few cases. (*Jessen*, *supra*, 111 Cal.App.4th at p. 705, citing *Flatt*, *supra*, 9 Cal.4th at p. 284.)

Automatic disqualification can be avoided in simultaneous representation cases when there is informed written consent when the attorney represents more than one client in a matter where there is a potential conflict, when there is an actual conflict between the concurrently represented clients, or when the attorney represents clients with adverse interests in two separate matters. (*Sharp v. Next Entertainment, Inc.* (2008) 163 Cal.App.4th 410, 429 [addressing Rules Prof. Conduct, former rule 3-310(C)(1)-(C)(3)].) Also, when a client's litigation costs are being paid by a third party, the client must provide informed written consent for the arrangement. (*Sharp*, at p. 430 [referencing Rules Prof. Conduct, former rule 3-310(F)].) In these situations, the attorney must disclose relevant circumstances as well as any actual or reasonably foreseeable adverse consequences. (*Sharp*, at p. 429.) "In order for there to be valid consent, clients must indicate that they 'know of, understand and acknowledge the presence of a conflict of interest. . . .' [Citation.]") (*Ibid.*)

12

### 3. *Simultaneous Representation*

On appeal, A.F. challenges the court's conclusion that Castro was engaged in concurrent representation. The court considered whether Castro represented Mother only, first as a party to the dissolution and second as the GAL in the DV matter. But it concluded the representations were separate because Mother's declaration stated she hired Castro to represent A.F., and because Mother signed a conflict of interest waiver, which would be unnecessary if she were the only client. It identified the possibility of concurrent representation based on the initial request for custody orders selected, because, it explained, that request cannot properly be made by a minor. (See § 6323.) It also considered the details Mother included in her declaration regarding her relationship with Father, which were not directly related to the incidents giving rise to the DVRO request.

In its findings, the court did not expressly identify simultaneous representation or explain the conflict of interest the simultaneous representation created, but its application of Rule 1.7, which requires disqualification of an attorney without a valid waiver of conflict, shows it concluded Castro was simultaneously representing Mother and A.F. Ultimately, the court disqualified Castro because it found A.F. had not provided the necessary informed, written consent, as Mother was not her GAL at the time the waiver was signed on A.F.'s behalf.

We begin by asking if there is substantial evidence to support the finding that Castro simultaneously represented Mother and A.F. (*City National Bank, supra*, 96 Cal.App.4th at p. 322.) If so, we then evaluate whether the court abused its discretion by disqualifying Castro. (*Zimmerman, supra*, 16 Cal.App.4th at p. 561.) We note that in response to A.F.'s petition for a DVRO, Father requested and received consolidation of

13

the dormant dissolution matter and the DV matter, but the cases were subsequently unconsolidated. Father's request for order seeking dismissal of a GAL or removal of Mother as GAL and disqualification of Castro as counsel for Mother or A.F. was initially filed in the consolidated matter, but once the matters were unconsolidated, the requests remained part of the DV matter.[9] The court's implicit conclusion that Castro represented both Mother and A.F. had to derive from material submitted in connection with A.F's DVRO petition because there was no pending activity in the dissolution matter at the time.[10]

The court mentioned Father's contention that Mother was being advised on her own behalf by Castro because of a reference to "Ed" in a 2019 email, but it found Father's conclusion was speculative. It admitted the email that referenced a communication Mother had with her attorney regarding the meaning of an item in the custody agreement and later stated that she could, if Father preferred, have "Ed" set up a hearing to resolve the matter. But the email was from 2019, long before A.F.'s 2021 petition. Thus, even if it showed Mother were represented by Castro in 2019, that does not demonstrate simultaneous representation in 2021.

The evidence the court identified as demonstrating simultaneous representation addressed the blurred lines between Castro's representation

---

[9] The request for disqualification sought disqualification of Castro from representing either Mother or A.F. in the matters before the court.

[10] The court also noted the dissolution matter was not before it, so any disqualification of Castro in that matter would be premature. We recognize that the outcome of the DV matter could result in actual or potential conflict if there are subsequent proceedings in the dissolution matter and Castro represents Mother there. However, those conflicts are not presently before the court.

14

of Mother as the GAL and Castro's representation of A.F. For example, Mother's declaration in the DVRO petition detailed conflicts she had with Father, including information about her past restraining orders against him and her suspicions and allegations about Father's interest in pornography. These details were specific to Mother personally and did not provide information about A.F.'s relationship with Father. The information was provided by Mother, not by Castro in his capacity as A.F.'s attorney. And it raised a concern about the propriety of Mother's role as the GAL in part because the custody agreement prohibits parents from exposing A.F. to court papers or disputes between A.F.'s parents. But it did not show that Castro was representing Mother.

Father argues that he and Mother had been engaged in disputes about custody for years, and she had previously attempted to eliminate Father's contact with A.F. The declaration that supports these claims does not show Castro represented Mother to navigate any of these disputes. Instead, it details that A.F. began participating in activities scheduled by Mother during Father's parenting time, argues Mother has contributed to the tension between Father and A.F., and offers explanations of what transpired between A.F. and Father to provide context for the incidents described in the DVRO petition.

Father contends substantial evidence supports the court's conclusion that Castro's representation of A.F. would be materially limited by Castro's relationship with Mother. But the evidence Father points to regards Castro's prior relationship with Mother, possibly as recently as 2019, and statements in the declaration that regarded details to which A.F. should not have had

15

access under the terms of the custody agreement. Those statements do not demonstrate simultaneous representation because Mother made them as A.F.'s GAL.

Father posits that Mother's interests diverge from A.F.'s interests because Mother wanted to limit or eliminate A.F.'s contact with Father and that is the remedy A.F. sought through a DVRO. But those positions are not in conflict. If, as Father claims, Mother's goal is eliminating Father's contact with A.F., and A.F.'s goal is the same, there is no conflict. To the extent Father is concerned that Castro may have obtained evidence from A.F. that could prejudice Father if Castro "seek[s] to continue his representation of [Mother] . . . ,", we note that such representation of Mother is speculative, and that Castro's duty of confidentiality is not to Father.

We recognize, as the trial court did, that Mother's role as the GAL was improper under the circumstances. Although a GAL acts in the minor's interests, Mother's statements about her personal history and impressions of Father fall outside that role. The trial court addressed this by removing Mother as the GAL, a decision neither party challenges. Thus, before us is the claim that Castro is simultaneously representing Mother and A.F. when Mother is no longer a participant in the DV litigation.

Father compares Castro's representation of A.F. to that of a neutral minor's counsel who represents a child in a custody dispute case to highlight his concern that Castro was meeting with Mother and A.F. together, that Castro was "unduly influenced" by Mother's positions and perceptions, which were not in "the interests of the minor child," and that Castro would influence A.F.'s perceptions of Father and thereby impinge on Father's parental rights. None of these concerns demonstrates simultaneous representation or is unique to Castro serving as A.F.'s attorney.

16

Further, the comparison is inapt. A neutral minor's counsel in a dissolution plays an entirely different role than counsel hired in a civil matter. In family court, counsel for a minor has a statutorily-imposed duty to present to the court recommendations based on what the attorney believes is in the best interests of the child in addition to the child's wishes. (§ 3151, subd. (a); Cal. Rules of Court, rules 5.242 (i) & (j); *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1266 [counsel for minor has duty to advocate for child's best interest].) In a civil matter, attorneys representing minors—or any other party who has a GAL—are bound by Business and Professions Code section 6068 and the State Bar Rules of Professional Conduct, and have an obligation to zealously represent their clients' interests within the bounds of the law. (*People v. McKenzie* (1983) 34 Cal.3d 616, 631 [duty to represent client zealously within bounds of law]; see *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167-168 [explaining application of sanctions must not conflict with duty to represent client zealously].) While Father may have preferred the allegations A.F. raises in her DVRO petition to have been raised in the custody context in the dissolution matter, the Domestic Violence Prevention Act (§ 6200 et seq.) allows a child to file a petition as a party to the action. (§§ 6211, subds. (f), 6301, subd. (a), 6301.5.)

None of Father's arguments nor the facts upon which he relies direct us to evidence that Castro simultaneously represents Mother and A.F. We cannot find substantial evidence to support the court's implicit conclusion that Castro simultaneously represents Mother and A.F. It was, therefore, an abuse of discretion to apply Rule 1.7 to disqualify Castro.

### 4. *Successive Representations*

A.F. contends the trial court should have considered whether there was successive representation and, if so, whether a conflict of interest between

17

Mother and A.F. actually existed, justifying Castro's disqualification. Father contends on appeal that this issue was forfeited because A.F. did not raise it below. (See *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3; *American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 ["An argument or theory will generally not be considered if it is raised for the first time on appeal"]; but see *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983 [recognizing issues of law regarding undisputed facts can be raised on appeal].)

A.F. did not raise successive representation in her briefs to the trial court.[11] Father's memorandum of points and authorities in support of his request to disqualify Castro challenged Castro's representation under Rule 1.7, and he did not explicitly raise successive representation as an issue. However, rather than limiting his focus to arguing the representation created a conflict that impacted Castro's duty of loyalty, as is implicated by conflicts governed by Rule 1.7 (see *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 822 [courts concerned with duty of loyalty in concurrent representation cases]; *City National Bank*, *supra*, 96 Cal.App.4th at p. 327 [same]), Father also expressed concern that such concurrent representation would present a "breach of confidentiality," the concern raised by successive representation, found in Rule 1.9 (Rules Prof. Conduct, rule 1.9(c)(1) & (2); *Western Sugar Coop*, *supra*, 98 F.Supp.3d at p. 1080 [successive representation of clients with adverse interests focuses on duty of confidentiality].).

---

11    A.F.'s contentions in her reply brief that her memorandum in opposition to Father's request for order asked the court to consider successive representation cited to cases that addressed successive representation but did not offer any analysis of the issue. It focused on responding to Father's claim of simultaneous representation.

Although the court noted Father's concern in its written order, it did not consider whether Castro successively represented Mother and A.F. or analyze whether there was a conflict of interest on that basis. The court did not ask whether the dissolution matter and the DV matter were substantially related. (See Rules Prof. Conduct, rule 1.9(a) & cmts. 1-3; *Western Sugar Coop*, *supra*, 98 F.Supp.3d at p. 1088, citing *Flatt*, *supra*, 9 Cal.4th at p. 283.) It did not expressly find that Castro's relationship to A.F. could breach his duty of confidentiality to Mother. (*Zimmerman*, *supra*, 16 Cal.App.4th at p. 563.) It did not discuss whether Castro's actions would injuriously affect Mother. (See *Id.* at p. 562; *City National*, *supra*, 96 Cal.App.4th at pp. 323-324.) And it did not " 'weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. [Citations.]' " (*Zimmerman*, at pp. 562-563.)

Had it considered successive representations, the court could have considered whether Mother's waiver was valid under the Rules of Professional Conduct.[12] Although Father raised issues implicated by

---

12    A lawyer may reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) if the client gives informed consent. (Rules Prof. Conduct, rule 1.6(a).) However, an attorney cannot use information protected via Rule 1.6 of the Professional Rules of Conduct to the disadvantage of the former client or reveal information acquired from the former relationship. (Rules Prof. Conduct, rule 1.9, subds. (c)(1) & (c)(2).) The waiver Mother signed on her own behalf is not in the record. Moreover, the parties have not argued on appeal that once a proper GAL is appointed, a minor is unable to provide informed consent.

successive representation, nothing indicates the trial court considered this argument when it disqualified Castro, and we decline determine whether there is a conflict of interest created by successive representation that justifies or requires Castro's disqualification because the record is undeveloped on this issue.

Given Mother's removal as the GAL and the lack of substantial evidence to support the court's implied finding of simultaneous representation, we cannot find a reasonable basis for the court's disqualification of Castro based on the record before us. Because we find the court abused its discretion in disqualifying Castro on the basis that he simultaneously represents Mother and A.F., we will reverse the disqualification of Castro and remand the matter for further proceedings consistent with this opinion.

## DISPOSITION

We reverse the order disqualifying Castro as counsel in case Nos. 21FDV01528N and DN171362, and we remand the matter to the trial court for further proceedings. We express no opinion regarding whether disqualification would be appropriate under another rule or standard.

HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.

Filed 6/9/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| A.F., a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JEFFREY F., <br><br> Defendant and Respondent. | D079373 <br><br> (Super. Ct. No. 21FDV01528N) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 18, 2022 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

HUFFMAN, Acting P. J.

Copies to:  All parties

2